EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix Ríos, et als.<br><br>    Recurridos<br><br>          v.<br><br>Municipio de Isabela, et als.<br><br>    Recurrente | Certiorari<br><br>2003 TSPR 122<br><br>159 DPR \_\_\_\_ |

Número del Caso: CC-2001-845

Fecha: 15 de julio de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV

Juez Ponente:
                    Hon. Yvonne Feliciano Acevedo

Abogado de la Parte Peticionaria:
                    Lcdo. Gerardo Méndez Ponce

Abogado de la Parte Recurrida:
                    Lcdo. Israel Roldán González

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Ríos, et als.

    Recurridos

        vs.                 CC-2001-845    CERTIORARI

Municipio de Isabela, et als.

    Recurrente

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 15 de julio de 2003

En el año 1998 el Alcalde de Isabela, atendiendo una situación de emergencia suscitada en su municipio, autorizó <u>verbalmente</u> a los contratistas recurridos --Félix Ríos, Oscar Ríos, Julio César Nieves y Víctor Tavarez-- a realizar trabajos de recogido de escombros, limpieza de caminos y otros similares. Los referidos acuerdos fueron realizados <u>sin</u> registrar los créditos necesarios para el pago de tales servicios en los libros del Municipio, según lo requerido en el Artículo 8.004(a) de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 et seq. Tampoco se cumplió con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. sec. 97, y el Artículo 8.016 de

la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4366, a los efectos de que los municipios deberán mantener un registro de todos los contratos que otorguen y deberán remitir copia de éstos a la Oficina del Contralor.

Una vez realizados los trabajos encomendados, los contratistas exigieron el pago de las sumas acordadas a lo que, alegadamente, el Municipio se negó. En vista de tal situación, éstos presentaron una demanda en cobro de dinero ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla. El 19 de diciembre de 2000, la Asamblea Municipal dicho Municipio se reunió en cesión extraordinaria y aprobó la Resolución Núm. 64.[1] Según surge de la propia Resolución, ésta fue aprobada con el <u>único</u> <u>propósito</u> de ratificar y convalidar el acuerdo pactado entre los contratistas, aquí recurridos, y el Alcalde del Municipio.

Así las cosas, el 22 de diciembre de 2000, las partes presentaron ante el tribunal de instancia una estipulación donde informaron sobre la aprobación de la Resolución Núm. 64 y notificaron que la Asamblea Municipal de Isabela había autorizado la transacción de la demanda de cobro incoada contra el Municipio. De este modo, solicitaron del tribunal que dictara sentencia ordenando el pago de las siguientes cantidades:

---

[1] El Alcalde firmó la Resolución el 20 de diciembre de 2000.

Sr. Félix Ríos - $40,680.00
Sr. Oscar Ríos - $69,698.00
Sr. Julio Cesar Nieves - $8,440.00
Sr. Víctor Tavarez - $8,320.00

Es importante señalar que, en las elecciones generales celebradas durante el mes de noviembre de 2000, resultó triunfante una nueva administración en el Municipio de Isabela; en consecuencia, la resolución aprobada por la Asamblea Municipal y la estipulación firmada por las partes se aprobaron y/o firmaron luego de saberse que la entonces vigente administración municipal cesaba sus funciones como tal a finales del año 2000.

El 5 de enero de 2001, archivada en autos el 16 de enero de 2001, el foro de instancia dictó sentencia declarando con lugar la demanda y ordenando el pago de las sumas señaladas.[2] Enterada la administración entrante de la sentencia dictada, el 30 de enero de 2001, presentaron una moción de reconsideración. En síntesis, alegaron que la estipulación presentada por las partes era contraria a la ley, al orden público y a la política pública. Específicamente alegaron que: (i) la resolución aprobada había sido autorizada sin registrarse los créditos necesarios para el pago de la misma y con cargo al presupuesto vigente, todo ello en contravención a lo dispuesto en el Artículo 8.004(a) de la Ley de Municipios

---

[2] Adviértase que en este momento ya habían comenzado las funciones de la nueva administración.

Autónomos, 21 L.P.R.A. sec. 4354;[3] (ii) que la estipulación violaba el Artículo 8.007 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4357, pues grababa el presupuesto para el año fiscal en una cantidad en exceso del 50% permitido por la Ley; y (iii) que la resolución aprobada, y por consiguiente la estipulación acordada, eran ilegales por cuanto pretendía ratificar y convalidar un acuerdo que carecía de validez por tratarse de un contrato hecho en contravención con lo dispuesto en la Ley de Municipios Autónomos y lo resuelto por este Tribunal en Hatton v. Municipio de Ponce, 134 D.P.R. 1001 (1994).

El foro de instancia se negó a reconsiderar la sentencia dictada por entender que, a tenor con lo dispuesto en el Artículo 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702,[4] la acción para suspender

---

[3] Este artículo dispone que "[l]os créditos autorizados para las atenciones de un año fiscal en específico serán aplicados exclusivamente al pago de gastos legítimamente originados incurridos durante el respectivo año, o el pago de obligaciones legalmente contraídos y debidamente asentadas en los libros del Municipio durante dicho año."

[4] El Artículo 15.002 de la Ley de Municipios Autónomos, ante, dispone, en lo aquí pertinente, que:

El Tribunal de Primera Instancia de Puerto Rico entenderá y resolverá, con exclusividad, a instancias de la parte perjudicada, sobre los siguientes asuntos:

(a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.

(Continúa . . .)

la ejecución de la resolución que dio lugar a la transacción judicial debió instarse dentro de los veinte (20) días siguientes a la fecha de promulgación de la resolución. De este modo, concluyó que el Municipio no había impugnado la resolución dentro del término jurisdiccional dispuesto por ley y que, por consiguiente, ésta debía presumirse correcta.

Insatisfecho con esta determinación, el Municipio de Isabela recurrió al Tribunal de Circuito de Apelaciones. Dicho foro, mediante sentencia a esos efectos, confirmó el dictamen recurrido. Entendió, al igual que lo hizo el foro de instancia, que la resolución aquí en controversia no había sido impugnada dentro del término jurisdiccional dispuesto en el Artículo 15.002, ante, de la Ley de Municipios Autónomos.

---

(b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la Asamblea, del Alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.
(c) ...
(d) ...
    En los casos contemplados bajo los incisos (a) y (b) de esta sección, la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya promulgado o comunicado a la parte querellante, a menos que se disponga otra cosa por ley.
    ....

Aún inconforme, el Municipio recurrió, oportunamente, ante este Tribunal vía *certiorari*. En síntesis, sostuvo que incidió el Tribunal de Circuito de Apelaciones:

> ... al no determinar que la Resolución de la Asamblea de Isabela y la Estipulación sometida viola la Ley [Núm.] 81 del 30 de agosto de 1991 según enmendada Ley de Municipios Autónomos.
>
> ... al no determinar que la estipulación sometida es nula, contraria a la ley, al orden y a la política pública.
>
> ... al aplicar el Artículo 15.002 de la Ley de Municipios Autónomos al caso de autos.

Examinada la petición de *certiorari*, expedimos el recurso solicitado a fin de revisar la sentencia emitida por el Tribunal de Circuito de Apelaciones. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

I

Ya hemos señalado que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." Mar-Mol Co. Inc. v. Adm. de Sevicios Generales, 126 D.P.R. 864, 871 (1990). A tono con lo anterior, en Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973), establecimos que "[l]as distintas disposiciones estatutarias [que] regul[an] la realización

de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento."

Lo antes dispuesto sirve de pauta para entender las razones por las cuales este Tribunal ha establecido una normativa de especial aplicación a los contratos municipales. De este modo, "hemos resaltado la rigurosidad de los preceptos legales que rigen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y recta administración pública, asunto que está revestido del más alto interés público." Fernández & Gutiérrez v. Municipio de San Juan, 147 D.P.R. 824, 829 (1999).

Así, y en ocasión de interpretar la Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. sec. 97, en Ocasio v. Alcalde Mun. de Maunado, 121 D.P.R. 37, 53-54 (1988), establecimos ciertos requisitos formales que deben ser observados rigurosamente siempre que se otorguen contratos municipales[5], a saber (i) que el acuerdo se haya hecho constar por escrito; (ii) que se mantenga un registro fiel

---

[5] Refiriéndonos a esta Ley, en Hatton v. Municipio de Ponce, 134 D.P.R. 1001, 1006 (1994), señalamos que ésta le "impone a los municipios la obligación, sin excepción alguna, de mantener un registro de todos los contratos que otorguen --incluyendo sus enmiendas-- y remitir copias a la Oficina del Contralor dentro de los quince (15) días siguientes."

con miras a establecer la existencia del contrato; (iii) que se remita copia del mismo a la Oficina del Contralor; y (iv) que se acredite la certeza de tiempo; esto es, que fue realizado y otorgado quince (15) días antes.

Es de notar que en el Artículo 8.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4366, se dispone, en lo pertinente, que "[l]os municipios [deberán] manten[er] un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos[,] y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las secs. 97 et seq. del Título 2 y su Reglamento." Además, este Artículo dispone que se considerará "nulo y sin efecto" todo contrato que se ejecute en contravención a lo allí dispuesto.

Tras reiterar los requisitos antes expuestos, en Fernández & Gutiérrez v. Mun. de San Juan, ante, a la pág. 833, expresamos que, la exigencia de formular lo acordado mediante contrato escrito es indispensable para que lo convenido tenga efecto vinculante y que el mismo tiene que ser cumplido "sin excepción alguna". Por otro lado, es importante resaltar el hecho de que en más de una ocasión este Tribunal se ha negado a reconocerle validez a aquellos acuerdos pactados en contravención con las normas antes dispuestas. A tales efectos, hemos señalado que las mismas deben ser rigurosamente observadas aun en

circunstancias de emergencia. Hatton v. Mun. de Ponce, ante, a las págs. 1005-09.

En este último caso el demandante, Hatton, acordó con un funcionario del Municipio de Ponce la obtención de equipo y materiales médico-quirúrgicos que serían utilizados en un centro de diagnóstico y tratamiento del Municipio. Se trataba de un acuerdo verbal que no había sido registrado en los libros del Municipio y que tampoco había sido remitido a la Oficina del Contralor. En esa ocasión, aplicando los preceptos expuestos anteriormente, resolvimos que el acuerdo pactado era ilegal. A tales efectos, señalamos que las normas aludidas no podían ser descartadas, ni siquiera en casos de emergencia, y que se requería una "escrupulosa adhesión" a los procedimientos especiales diseñados para "prevenir el despilfarro, la corrupción y el amiguismo". Hatton v. Mun. de Ponce, ante, a la pág. 1006. Finalmente, señalamos que "los tribunales debemos estar vigilantes y evitar que se utilicen estos procedimientos para burlar las disposiciones legales dirigidas a asegurar la más sana administración pública." Hatton v. Mun. de Ponce, ante, a la pág. 1006.

II

La aplicación de los preceptos antes esbozados a los hechos del presente caso revela la ilegalidad del acuerdo pactado entre los contratistas recurridos y la administración municipal saliente. Esto es, dicho acuerdo

no fue formulado mediante un contrato escrito, por lo que fue imposible registrar el mismo en los libros del Municipio o enviar su copia a la Oficina del Contralor.[6] La propia Ley pauta el efecto jurídico del incumplimiento con estas normas al disponer que todo contrato que se ejecute o suscriba en contravención a lo dispuesto en el Artículo 8.016, ante, el cual, como señaláramos, requiere que el contrato suscrito sea registrado y enviado a la Oficina del Contralor, será nulo y quedará sin efecto.[7] Sustenta esta conclusión lo dispuesto jurisprudencialmente en torno a la exigencia de que todo contrato municipal conste por escrito y que se cumpla a cabalidad con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, ante.

En cuanto a la ratificación efectuada por la Asamblea Municipal de Isabela, basta con señalar que ésta no tenía facultad para convalidar o ratificar el referido contrato mediante la aprobación de la Resolución Núm. 64 aquí en controversia. Esto es, la Asamblea carecía de autoridad

---

[6] En vista de tal conclusión no es necesario discutir lo relativo a la violación de las normas presupuestarias establecidas en los artículos 8.004, 8.006, 8.007 y 8.009 de la Ley, 21 L.P.R.A. secs. 4354, 4356, 4357 y 4359.

[7] Tal nulidad surge, además, de lo expresado en el Artículo 4 del Código Civil, 31 L.P.R.A. sec. 4, a los efectos de que todo acto ejecutado contra lo dispuesto en la ley es nulo, salvo aquellos casos en que la misma ley ordene su validez. Otra disposición que apoya tal conclusión es el Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372, en cuanto dispone que los contratantes no podrán establecer pactos, cláusulas y condiciones que sean contrarios a las leyes, a la moral, ni al orden público.

para darle eficacia a un convenio que adolecía de nulidad absoluta. Ello en vista de la normativa reiterada por este Tribunal a los efectos de que todo contrato nulo, como el que hoy nos ocupa, es inexistente en Derecho desde el momento mismo en que se otorga y, por lo tanto, no puede ser objeto de confirmación ni de prescripción sanatoria. Guzmán Rodríguez v. Guzmán Rodríguez, 78 D.P.R. 673, 682 (1955).[8]

A la luz de los pronunciamientos antes esbozados, forzosa resulta ser la conclusión de que el foro de instancia erró al dictar una sentencia "impartiendo su aprobación a la estipulación que le habían presentado el Municipio y los demandantes en el caso de autos, mediante la cual se pretendió darle efectividad al contrato que aquí nos concierne."[9] Del mismo modo, erró el Tribunal de Circuito de Apelaciones al confirmar el dictamen emitido por el foro de instancia.

Lo antes dispuesto es más que suficiente para disponer del recurso ante nos. Esto es, habiéndose

---

[8] Así lo reconocimos hace décadas en Tomasini v. Mun. de Ponce, 50 D.P.R. 804, 808 (1936) donde, ante unos hechos muy similares al caso de autos, señalamos que la Asamblea Municipal de Ponce no podía ratificar, mediante resolución, un contrato celebrado por el Alcalde y el Comisionado de Obras Públicas Municipales que resultó ser nulo y *ultra vires* por contravenir la Ley Municipal vigente a esa fecha.

[9] Tal y como señaláramos en Irizarry Cordero v. Registrador, 91 D.P.R. 719, 721 (1965), los tribunales de instancia carecen de facultad para aprobar contratos nulos e inexistentes.

determinado que el contrato aquí en controversia es nulo e inexistente  --y habiéndose establecido que el mismo no está sujeto a convalidación-- lo único que resta y procede es revocar el dictamen emitido por ambos foros inferiores y desestimar la demanda incoada. Es decir, no había razón alguna para que los foros inferiores entraran a discutir lo relativo al término de caducidad dispuesto en el Artículo 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702, utilizando ello como fundamento para negarse a reconsiderar la sentencia dictada.

Como es sabido, esta disposición de ley establece un término de caducidad de veinte (20) días para impugnar ante el foro de instancia cualquier ordenanza, resolución o acuerdo de la Asamblea, del alcalde o de cualquier funcionario del municipio. Dicho término resulta inmaterial ante ordenanzas o resoluciones aprobadas con el único fin de convalidar actos nulos e inexistentes.

Ya hemos señalado que la acción para decretar la inexistencia de un contrato nunca prescribe y que, por consiguiente, no hay punto de partida para contar término de prescripción alguno. Rivera v. Sucn. Díaz Luzunaris, 70 D.P.R. 181, 197 (1949); Cruz v. Ramos, 70 D.P.R. 715, 719 (1949); Véase además: José Ramón Vélez Torres, Curso de Derecho Civil, San Juan, Ed. Rev. Jur. Universidad Interamericana de Puerto Rico, 1990, T. IV, pág. 125. Esta norma, firmemente enraizada en nuestro ordenamiento civil, no puede ser burlada con la mera aprobación de una

resolución que pretenda encubrir la nulidad de un acuerdo ilegal. Ciertamente, el término de caducidad que dispone el Artículo 15.002, ante, no puede tener el efecto de frenar un decreto de inexistencia de contrato y, mucho menos, puede convertirse en subterfugio para convalidar contratos nulos.

Adviértase que no basamos nuestra decisión en el hecho de que la resolución aquí en controversia lesione derechos garantizados por la Constitución del Estado Libre Asociado o por las leyes estatales, lo que contempla la Ley de Municipios Autónomos en su Artículo 15.002, ante. Se trata de que dicha resolución intentó convalidar una actuación inexistente. Recordemos que lo inexistente nunca puede ser convalidado, Brown v. Junta de Directores Condominio Playa Grande, res. el 6 de junio de 2001, 2001 TSPR 80; ni siquiera mediante la aprobación de una resolución municipal. Esta norma, repetimos, no puede ser burlada invocando para ello el término jurisdiccional de veinte días que dispone el Artículo 15.002, ante.

III

En mérito de lo anterior, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, confirmatoria la misma de la emitida por el Tribunal de Primera Instancia, y desestimar la demanda presentada por los contratistas aquí recurridos.

Se dictará Sentencia de conformidad.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Ríos, et als.

    Recurridos

        vs.                      CC-2001-845    CERTIORARI

Municipio de Isabela, et als.

    Recurrente

SENTENCIA

San Juan, Puerto Rico, a 15 de julio de 2003

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso, confirmatoria la misma de la emitida por el Tribunal de Primera Instancia; desestimándose la demanda presentada por los contratistas aquí recurridos.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Asociado señor Fuster Berlingeri emitió Opinión concurrente, a la cual se unieron el Juez Presidente señor Andréu García y la Jueza Asociada señora Naveira de Rodón.

                          Carmen E. Cruz Rivera
            Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Félix Ríos, Et als.

    Recurridos

        vs.                    CC-2001-845     Certiorari

Municipio de Isabela,
Et als.

    Recurrente


Opinión Concurrente emitida por el JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI, a la que se unen el Juez Presidente señor ANDREU GARCIA y la Juez Asociada señora NAVEIRA DE RODON.

San Juan, Puerto Rico a 15 de julio de 2003.

En el caso de autos, tanto el tribunal de instancia como el foro apelativo denegaron **una moción de reconsideración** presentada por el Municipio mediante la cual éste cuestionaba un dictamen previo del tribunal sentenciador. El tribunal de instancia y el foro apelativo denegaron la referida moción de reconsideración por el mismo y único fundamento de **que carecían de jurisdicción para entender en dicha reconsideración**. Ambos resolvieron que el planteamiento formulado por primera vez por el Municipio mediante la reconsideración en cuestión era fatalmente tardío, por haberse presentado fuera del término de caducidad aplicable.

En vista de los dictámenes judiciales referidos, el Municipio acudió ante nos y en lo primordial señaló como error que los foros *a quo* hubiesen denegado su moción de reconsideración porque supuestamente no tenían jurisdicción para considerarla.

Expedimos el auto precisamente para examinar la controversia específica de si los foros *a quo* carecían de jurisdicción para entender en la reconsideración en cuestión.

Lo anterior no obstante, una mayoría del Tribunal, mediante una opinión, despacha ligeramente **el asunto en controversia** y opta en vez por adjudicar el caso de autos primordialmente a base de la nulidad de la sentencia original del foro de instancia.

No estamos en desacuerdo con la mayoría del Tribunal en cuanto a la nulidad de la sentencia aludida. Pero diferimos de su dictamen en cuanto al medular asunto para cuya consideración expedimos este recurso. Veamos.

Tanto la parte recurrida como el foro de instancia y el foro apelativo han sostenido aquí el criterio de que la Resolución municipal que provocó el pleito de autos sólo podía ser impugnada dentro de veinte días a partir de haberse aprobado dicha Resolución, porque tal es el término que fija para ello la Ley de Municipios Autónomos. Según ellos, la moción de reconsideración del Municipio no podía ser atendida ya que, mediante tal moción se impugnaba la validez de una resolución municipal pasados los veinte días que tenía la parte peticionaria para instar tal impugnación. El Municipio, en cambio, entendía que la reconsideración aludida estaba en orden. La mayoría, en esencia, soslayó esta controversia al resolver que como la Resolución municipal aludida era nula, los tribunales no la podían hacer valer. Nótese que en el caso de autos

el foro de instancia había puesto en vigor la Resolución referida, sin que nadie hubiera levantado entonces de modo alguno su nulidad. Por ende, emitido tal dictamen, **se necesitaba algún medio, alguna vía procesal para que los que creyesen que la Resolución era nula, pudiesen impugnarla**. Esa vía la provee el Art. 15.002 de la Ley de Municipios Autónomos. La mayoría determina ahora sencillamente que la Resolución era nula y así inevitablemente **torna en inconsecuente** la limitación que establece el referido Art. 15.002 de la Ley de Municipios Autónomos de que resoluciones como las del caso de autos sólo pueden ser impugnadas dentro del término de caducidad de veinte días. En términos prácticos la mayoría **va mucho más lejos** que lo solicitado por los peticionarios. Estos sólo procuraban alguna flexibilidad en cuanto a la aplicación del término de los veinte días pero la mayoría **en efecto** resuelve que dicho término **no tiene consecuencia alguna**. **¡Da igual cuándo se impugne la Resolución municipal, ya sea dentro de los veinte días de aprobada o ya sea meses o años después!** Ello porque la mayoría resuelve que si la Resolución municipal es nula, **nada hay que discutir o examinar sobre cuándo puede impugnarse tal resolución**. Esta liberalidad extrema del dictamen mayoritario en efecto constituye una **DEROGACIÓN** judicial del término dispuesto en el Art. 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702, lo que rebasa lo solicitado por el Municipio de Isabela aquí, y rebasa además la postura de los que creemos que dicha disposición debe interpretarse con alguna flexibilidad, como lo habíamos hecho antes.

**La liberalidad extrema de la mayoría referida en el párrafo anterior, rebasa también la autoridad de este Foro**. No puede este Tribunal ignorar lo dispuesto en el Art. 15.002, como lo hizo la

mayoría aquí, a menos que se declare que esa disposición es inconstitucional, cosa que la mayoría no hizo en su opinión, evidentemente por carecer de fundamento válido alguno para hacerlo. Lo único que la mayoría hizo con respecto a este medular asunto fue ofrecer, de pasada, una ligera racionalización para no darle efecto alguno al término referido que establece el Art. 15.002. Aduce la mayoría que ya está resuelto que la acción para declarar que un contrato es nulo, no **prescribe**. Lo que a la mayoría se le olvida es que esa norma se estableció específicamente con respecto a contratos **personalísimos** como el de **matrimonio** y como el de **transacción de derechos hereditarios** en casos en los cuales uno de los contratantes **carecía de capacidad** por enajenación mental o jurídica. Además, en ambos casos se trataba de un término de prescripción, no de **caducidad** como es el que aquí nos concierne.[10] Se trataba, pues, de situaciones totalmente distintas a las del caso de autos. No tiene sentido jurídico alguno descartar el claro mandato legislativo contenido en el Art. 15.002 a base de los casos aludidos. La clara intención del legislador fue que cuando se aprobase una resolución municipal como la del caso de autos, que claramente atenta contra las leyes fiscales del país, las personas concernidas pudiesen impugnarla dentro de un **término apremiante**. El legislador limitó el término para la impugnación prevista, a fin de impartirle finalidad y certeza a las actuaciones del gobierno municipal. La mayoría ahora, de un plumazo, da al traste con tal importante finalidad al decretar que la resolución municipal puede ser impugnada por nulidad en cualquier momento, aunque sea mucho tiempo después de haberse

---

[10] Para la diferencia entre un término prescriptivo y uno de caducidad, véase Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562 (1966).

puesto en vigor. El remedio legislativo a favor de la seguridad de las actuaciones municipales la mayoría arbitrariamente lo sustituye ahora por una condición de inestabilidad permanente, sin que nadie le haya solicitado tal cosa. Tal actuación de la mayoría es tanto confusa como infundada sobre todo porque se invoca una **<u>inaplicable norma jurisprudencial para desacatar un mandato legislativo</u>**. Aun si la norma sobre la imprescriptibilidad de la nulidad contractual fuese aplicable en un contexto como el de autos, que no lo es, todavía quedaría la barrera insuperable de que el legislador ha inmunizado las actuaciones municipales de tal modo que sus defectos **<u>caducan</u>** si no se impugnan dentro del término de veinte días ordenado por la Ley de Municipios Autónomos. Este Foro sencillamente no tiene autoridad ninguna para derogar el mandato legislativo en cuestión si no es a base de su inconstitucionalidad.[11] La mayoría no invoca la Constitución en su dictamen derogatorio del Art. 15.002; ni puede hacerlo porque no hay nada en la Constitución que justifique el enrevesado dictamen mayoritario. La Asamblea Legislativa tiene facultad para crear o eliminar términos prescriptivos, y para crear o eliminar términos de caducidad. El que no tiene facultad para contraponer normas jurisprudenciales a mandatos legislativos es este Tribunal, cosa que la mayoría parece haber olvidado aquí.

Es por todo lo anterior que sometemos para publicación como opinión concurrente la ponencia que habíamos formulado para el caso de autos antes de que se hubiese redactado la opinión mayoritaria.

---

[11] Para una clara exposición de los límites de este Foro con respecto a los mandatos legislativos, véase <u>Clínica Juliá v. Sec. de Hacienda</u>, 76 D.P.R. 509, 520-521 (1954).

I

Félix Ríos, Oscar Ríos, Julio César Nieves y Víctor Tavarez presentaron una demanda en cobro de dinero contra el Municipio de Isabela, en la que se alegó que éste se negaba a pagar por un trabajo realizado por los demandantes. Tras varios trámites procesales, el **22 de diciembre de 2000**, los reclamantes y el Municipio presentaron al Tribunal de Primera Instancia, Sala Superior de Aguadilla, una estipulación mediante la cual informaban que la Asamblea Municipal y el Alcalde de Isabela habían autorizado la transacción de la referida demanda, y a base de ello, solicitaban al tribunal que dictara una sentencia ordenando al Municipio el pago de las siguientes cantidades:

1. Félix Ríos – la cantidad de $40,680

2. Oscar Ríos – la cantidad de $69,689

3. Julio César Nieves – la cantidad de $8,440

4. Víctor Tavarez – la cantidad de $8,320

El 5 de enero de 2001 el tribunal de instancia dictó una sentencia de conformidad con la estipulación presentada, que fue archivada en autos **el 16 de enero de 2001**.

**Para entender cabalmente los procedimientos posteriores a la sentencia referida, es necesario señalar que en las elecciones celebradas el noviembre de 2000 resultó electa una nueva administración para el Municipio de Isabela. La estipulación que se le presentó al foro de instancia el 22 de diciembre de 2000 había sido autorizada mediante la Resolución Núm. 64, que se aprobó en una cesión extraordinaria por la** Asamblea Municipal saliente **celebrada el 19 de diciembre de 2000. El Alcalde saliente a su vez la había firmado el 20 de diciembre de 2000,** habiendo ocurrido todo ello

escasamente tres semanas antes de que entrara en funciones la nueva administración electa del municipio. **En la Resolución referida se indicaba que por razón de los daños causados** en 1998 **por el** Huracán Georges, **y la resultante situación de emergencia, el Alcalde de Isabela había autorizado** verbalmente **a los contratistas reclamantes a realizar trabajos de recogido de escombros, limpieza de caminos y otros similares,** sin haber registrado los créditos necesarios para el pago de tales servicios. **Se reconocía, sin embargo, que las labores referidas habían sido realizadas, por lo que se autorizaba** ahora **el pago de la deuda y que se transigiese la demanda.**

**Así las cosas, habiendo entrado en funciones la nueva administración electa en noviembre de 2000, el Municipio presentó oportunamente al foro de instancia una moción de reconsideración con respecto a la sentencia por estipulación antes mencionada. Se alegó en esencia** que la estipulación realizada por las partes era contraria a la ley, al orden y a la política pública. **En específico, y en lo primordial, se adujo** *inter alia: (1)* **que dicha estipulación, basada en la Resolución Núm. 64 aprobada por la Asamblea Municipal saliente, violaba el Art. 8.009 de la Ley de Municipios Autónomos en cuanto grababa el presupuesto para el año fiscal en una cantidad que resultaba en un exceso del 50% de dicho presupuesto permitido por la ley; (2) que dicha estipulación, aprobada en una sesión extraordinaria y a tan sólo tres semanas de la fecha en que se habría de transferir la administración del Municipio a las nuevas autoridades electas, era ilegal también porque se había aprobado sin haberse registrado los créditos necesarios para el pago de ésta y con cargo al presupuesto vigente, todo lo cual violaba lo dispuesto**

en el Art. 8.004(a) de la Ley de Municipios Autónomos, que dispone que:

> "(a)Los créditos autorizados para las atenciones de un año fiscal en específico serán aplicados exclusivamente al pago de gastos legítimamente originados <u>incurridos durante el respectivo año</u>, o el pago de obligaciones legalmente contraídos y <u>debidamente asentadas en los libros del Municipio durante dicho año</u>." (Énfasis suplido).

Y (3) que la estipulación era ilegal porque se pretendía con ella darle eficacia a un acuerdo del Alcalde saliente que era nulo por violar las normas que aplican a los contratos municipales según fijadas por el Tribunal Supremo de Puerto Rico en <u>Hatton v. Municipio de Ponce</u>.

**El tribunal de instancia denegó la moción de reconsideración del Municipio. En síntesis, en cuanto a lo que aquí nos concierne, concluyó que la transacción en cuestión era conforme a la Resolución Núm. 64 emitida por la Asamblea Municipal** <u>y que dicha Resolución no había sido impugnada dentro del término jurisdiccional dispuesto por ley para ello, por lo cual se presumía correcta</u>. **Inconforme con este dictamen, el Municipio recurrió al Tribunal de Circuito de Apelaciones. Éste, mediante la sentencia recurrida del 28 de agosto de 2001, confirmó la determinación del tribunal de instancia.** <u>Resolvió igual que el foro de instancia que la Resolución Núm. 64 de la Asamblea Municipal no fue impugnada dentro del término jurisdiccional dispuesto por ley</u>, **por lo que había que considerar como correcta la actuación de dicha Asamblea, que obligaba al Municipio.**

Insatisfecho también con dicha determinación, el Municipio de Isabela recurrió ante nos, haciendo en lo pertinente el siguiente señalamiento de error:

Erró el Honorable Tribunal de Apelaciones al aplicar el Artículo 15.002 de la Ley de Municipios Autónomos al caso de autos.

El 7 de diciembre de 2001, expedimos el recurso solicitado por el Municipio de Isabela a fin de revisar la sentencia del foro apelativo del 28 de agosto de 2001. El 8 de marzo de 2002, el Municipio solicitó que aceptáramos la petición de certiorari como su alegato, a lo que accedimos el 18 de abril de 2002. El 2 de mayo los recurridos solicitaron que aceptáramos su oposición a la petición de certiorari como su alegato, a lo que accedimos también el 31 de mayo de 2002.

II

**Desde hace más de una década está arraigada en nuestra jurisprudencia una firme normativa con relación** a los contratos municipales. **Informada por el criterio rector de que** "la buena **administración de un gobierno es una virtud de democracia" y de que** "una buena administración implica llevar a cabo sus funciones como comprador **con eficiencia, honestidad y corrección para proteger los . . . dineros del pueblo al cual dicho gobierno representa"** <u>**Mar-Mol Co. v. Adm. Servicios Gens.**</u>**, 126 D.P.R. 864, 871 (1990), la normativa referida le inyecta un** rigor especial **a los preceptos jurídicos que rigen las relaciones comerciales entre las personas privadas y los municipios.** <u>**Fernández & Gutiérrez v. Mun. de San Juan**</u>**, 147 D.P.R. 824, 829 (1999);** <u>**Hatton v. Mun. de Ponce**</u>**, 134 D.P.R. 1001, 1005-1006 (1994);** <u>**Ocasio v. Alcalde Mun. de Maunabo**</u>**, 121 D.P.R. 37, 54 (1988);** <u>**Morales v. Mun. de Toa Baja**</u>**, 119 D.P.R. 682, 693 (1987).**

**Con arreglo a la normativa referida, para que los contratos otorgados por un municipio sean válidos, éstos deben satisfacer varios requisitos formales** que, según hemos resuelto antes, tienen carácter constitutivo con respecto a su eficacia. **Se trata de requisitos que** deben seguirse rigurosamente al momento de pactarse el contrato, **y todo contrato ejecutado sin cumplir con dichos requisitos** es nulo. **Fernández & Gutiérrez v. Mun. de San Juan**, *supra*, pág. 830; **Hatton v. Mun. de Ponce**, *supra*, pág. 1007.

**Uno de los requisitos requeridos es que el contrato conste** por escrito. **Para que lo convenido sea vinculante, lo acordado debe formularse por escrito,** "sin excepción alguna". **Fernández & Gutiérrez v. Mun. de San Juan**, *supra*, pág. 833; **Hatton v. Mun. de Ponce**, *supra*, pág. 1006; **Ocasio v. Alcalde Mun. de Maunabo**, *supra*, pág. 54.

**Estrechamente relacionados con el requisito de que el contrato se formule por escrito, existen otros requisitos formales que también son indispensables en los convenios municipales, a saber: (1) que el contrato sea incluido en el** registro **que los municipios deben llevar relativo a tales convenios y que sirve para establecer** *prima facie* **la existencia del contrato; y (2) que se remita** copia del contrato a la Oficina del Contralor dentro de los quince días siguientes a su otorgación, **como medio para tener una doble constancia de su otorgamiento y de sus términos. Se trata de unos mecanismos de cotejo y publicidad de los contratos municipales, que también tienen carácter constitutivo con respecto a la eficacia de éstos. Fernández & Gutiérrez v. Mun. de San Juan**, *supra*, pág. 830; **Hatton v. Mun. de Ponce**, *supra*, págs. 1006; **Ocasio v. Alcalde de Mun. Maunabo**, *supra*, pág. 54.

**Debe enfatizarse que los requisitos formales referidos, y en particular el de que lo convenido conste por escrito, aplican aun cuando existe un** "estado de emergencia" **real, debidamente proclamado por el Alcalde o por el Gobernador de Puerto Rico. Como bien señalamos en** Hatton v. Mun. de Ponce, *supra*, **págs. 1005-1009, en casos de emergencias reales, que exijan acción inmediata, el alcalde puede obviar requisitos tales como contratar la ejecución de servicios** sin llevar a cabo el procedimiento de subasta. **Pero aun en tales casos, no se puede obviar que la autorización de tales servicios se haga por escrito,** "haciendo constar los hechos que provoquen la emergencia". **Reiteramos aquí que salvaguardas como la de formular por escrito lo convenido, aun en situaciones de emergencia, persiguen el propósito:**

> "de evitar que los estados de emergencia——bien reales o ficticios——sean mal utilizados por funcionarios municipales y terceras personas." Hatton v. Mun. de Ponce, *supra*, pág. 1008.

Como señalamos también en Fernández & Gutiérrez v. Mun. de San Juan, *supra*, pág. 831, los requisitos formales de los contratos municipales, no pueden descartarse "ni siquiera en casos de emergencia" porque son necesarios "para prevenir el despilfarro, la corrupción y el amiguismo" que pueden ocurrir aun en tales circunstancias. Sólo así procuramos "el manejo prudente de los fondos del pueblo", "asunto que está revestido del más alto interés público" *Id.*, pág. 829.

Como parte de la normativa referente a los contratos municipales, también hemos resuelto que en casos relativos a tales contratos, los tribunales "deben estar vigilantes" **para evitar que se burlen las disposiciones legales dirigidas a asegurar la más sana administración pública.** Hatton v. Mun. de Ponce, *supra*, **pág. 1001.**

Véase, además, De Jesús v. Autoridad de Carreteras, 148 D.P.R. 255 (1999). Le corresponde a los foros judiciales examinar situaciones como la del caso de autos con suma cautela para asegurarse que se han cumplido cabalmente las normas referidas sobre el desembolso de fondos públicos, Ocasio v. Alcalde Mun. de Maunabo, *supra*, pág. 54, normas que existen para "proteger el interés público y no a las partes contratantes". Morales v. Mun. de Toa Baja, *supra*, pág. 697. Así mismo hemos resuelto que en las situaciones en que no se han observado las normas dirigidas a proteger el interés público, las personas que han prestado servicios o materiales al municipio no están protegidas por doctrinas tales como la de enriquecimiento injusto. Al menos desde 1987, en Morales v. Municipio de Toa Baja, *supra*, pág. 692-693, hemos hecho meridianamente claro que las violaciones a las normas referidas son tajantes, por lo que no hay cabida para la aplicación de los principios de equidad. *Id*. Este criterio, lo hemos reiterado posteriormente, al resolver que en estos casos de contratación municipal, los reclamantes saben o deben saber que un acuerdo en contravención a las normas referidas es totalmente ineficaz. El interés público así lo requiere. Fernández & Gutiérrez v. Mun. de San Juan, *supra*, pág. 833; Hatton v. Mun. de Ponce, *supra*, págs. 1010-1012.


III

Es evidente que el supuesto contrato municipal que aquí nos concierne no cumplía con varios de los requisitos formales indispensables referidos antes. No se hizo por escrito, y por ello, tampoco se envió copia de éste a la Oficina del Contralor dentro de los quince días siguientes a su otorgamiento. No surge de los autos,

además, que se hubiese inscrito en el registro que el municipio debe llevar con respecto a los contratos municipales. El supuesto contrato, pues, era nulo; inexistente desde el punto de vista jurídico. Ausentes cuando menos algunos de sus requisitos formales constitutivos, no tenían facultad la Asamblea Municipal y el Alcalde para convalidarlo como pretendieron hacerlo dos años más tarde con la aprobación de la Resolución Núm. 64 antes mencionada. Carecían de autoridad para darle eficacia a un convenio que era absolutamente nulo.

Falló asimismo el foro de instancia al dictar una sentencia el 5 de enero de 2001 impartiendo su aprobación a la estipulación que le habían presentado el Municipio y los demandantes en el caso de autos, mediante la cual se pretendió darle efectividad al contrato que aquí nos concierne. Le correspondía a ese foro escrutar con mucha cautela los documentos que tuvo ante sí en esa ocasión, para asegurarse que se hubiesen observado aquí rigurosamente los requisitos formales de los contratos municipales, que son de naturaleza constitutiva. Si lo hubiera hecho, hubiese podido comprobar que no existía un contrato municipal válido, por lo que no procedía de modo alguno que le impartiese su aprobación a la estipulación referida.[12]

---

[12] En vista de que resolvemos que el supuesto contrato ante el Municipio de Isabela y los reclamantes era nulo por el fundamento cardinal de que carecía de varios de los requisitos formales constitutivos de los contratos municipales, no es necesario expresarnos *in extenso* sobre los fundamentos relativos a las normas presupuestarias que obviamente fueron violadas también, establecidas en los Artículos 8.004 y 8.009 de la Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4354 y 4359.

## IV

**Tanto el foro de instancia como el foro apelativo denegaron la moción de reconsideración que la nueva administración municipal presentó** el 31 de enero de 2001 **con respecto a la sentencia por estipulación dictada por el tribunal de primera instancia el 5 de enero de 2001, que fue notificada el** 16 de enero de 2001. Ambos foros resolvieron por igual que no procedía la reconsideración referida porque el Municipio no había impugnado judicialmente la Resolución Núm. 64 aludida antes dentro del término de 20 días de haberse aprobado, según lo fija el Art. 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A sec. 4702.[13]

**El dictamen referido del foro de instancia y del foro apelativo es insostenible. Constituye una interpretación errónea del Art. 15.002 de la Ley de Municipios Autónomos a la luz de los hechos del caso de autos. Veamos.**

---

[13] 21 L.P.R.A. sec. 4702

"(1) El Tribunal de Primera Instancia de Puerto Rico, entenderá y resolverá, con exclusividad a instancia de la parte perjudicada sobre los siguientes asuntos:

    (a)  . . .
    (b)  Suspender la ejecución de cualquier ordenanza, resolución o acuerdo de la Asamblea, del alcalde o de cualquier funcionario del Municipio que lesione derechos garantizados por la Constitución del E.L.A. o por las leyes estatales.
    (c)  . . .
    (d)  . . .

En los casos contemplados bajo los incisos (a) y (b) de esta Sección, la acción judicial sólo podría instarse dentro de los veinte días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya promulgado o comunicado a la parte querellante, a menos que se disponga otra cosa por Ley. . .". (Énfasis suplido)

La referida disposición en la que se ampararon los foros *a quo* para denegar la moción de reconsideración del Municipio de Isabela en este caso, es el inciso (b) del Art. 15.002 de la Ley de Municipios Autónomos, *supra*, que faculta al foro de instancia a entender en acciones judiciales instadas con el fin de "suspender la ejecución" de cualquier ordenanza, resolución o acuerdo de cualquier ente o funcionario municipal, que no se ajusten al ordenamiento jurídico. En esencia, y con respecto a lo que aquí nos concierne, dicho inciso parte de la premisa de que no son ejecutables las resoluciones municipales que sean ilícitas, por lo que se autoriza al foro judicial a impedir que se lleve a cabo lo dispuesto en tales resoluciones.[14] Nótese, pues, que no se le da poder al foro judicial para revocar o derogar como tal las referidas resoluciones municipales, lo que propiamente le corresponde a las autoridades municipales, sino más bien para detener su ejecución, para parar que se pongan en vigor.

En el caso de autos puede estimarse que la solicitud de la nueva administración municipal en la aludida moción de reconsideración procuraba que se impidiese la ejecución de la Resolución Núm. 64 en cuestión. Dicha moción iba dirigida concretamente a solicitar del tribunal que dejara sin efecto su sentencia anterior por estar ésta fundada en una estipulación que le

---

[14] Si bien el verbo "suspender" significa "diferir por algún tiempo una acción u obra, Diccionario de la Lengua Española de la Real Academia, también tiene la acepción de "parar o detener", Diccionario de Sinónimos y Antónimos de la Lengua Española (1986), que implica un efecto permanente. Evidentemente es en este último sentido que se usa en el inciso (b) del referido Art. 15.002 porque si una resolución municipal viola la Constitución o las leyes del país, no procede que se aplace su ejecución sino más bien que se pare definitivamente.

daba eficacia a un contrato claramente nulo. Como parte del argumento, el Municipio peticionario adujo que por medio de la Resolución Núm. 64 se había pretendido convalidar el supuesto contrato referido, por lo que podía considerarse que la moción de reconsideración perseguía detener la ejecución de lo dispuesto en la Resolución en cuestión.

Lo anterior nos trae a la evaluación del fundamento invocado por el foro de instancia y por el foro apelativo para denegar la reconsideración aludida, de que el Municipio procuró detener la ejecución de la Resolución Núm. 64 tardíamente. Según hemos resuelto reiteradamente antes, el término de caducidad de 20 días del Art. 15.002 de la Ley de Municipios Autónomos, que según dispone dicho Artículo aplica por igual a sus incisos (a) y (b), no comienza a transcurrir hasta que haya ocurrido una adecuada notificación de la acción municipal que se impugna judicialmente. Véase, Río Construction Corp. v. Mun. de Caguas, ___ D.P.R. ___ (2001), 2001 TSPR 143, 2001 JTS 148. Precisamente por tratarse de un término muy breve, y de un término de caducidad, el debido proceso de ley requiere que la notificación en cuestión sea real y efectiva. *Id.* Por ello resolvimos en el caso antes citado que para que corriese el término en cuestión no bastaba una notificación verbal sino que se requería una notificación escrita. Por razones similares resolvimos también en Nogama Const. Corp. v. Mun. de Aibonito, 136 D.P.R. 146 (1994), que el término en cuestión se contaba a partir de la fecha de la notificación final de la decisión adjudicativa municipal y no desde el momento en que la ordenanza que dio base a dicha decisión fue notificada a la parte que la impugna. Así mismo, en un caso que volveremos a mencionar más adelante, en que un alcalde impugnó la

validez de una ordenanza municipal, determinamos expresamente que el término de caducidad en cuestión no comenzaba a transcurrir a partir de la fecha en que la ordenanza fue aprobada sino doce días más tarde, cuando dicha ordenanza le fue notificada formalmente al alcalde. Acevedo v. Asamblea Mun. San Juan, 125 D.P.R. 182 (1990). En dicho caso era evidente que el alcalde conocía la ordenanza desde mucho antes que le fuera notificada formalmente, ya que él la había vetado cuando fue aprobada inicialmente, dos semanas antes de que dicha ordenanza fuese aprobada por segunda vez, con la mayoría necesaria para superar el veto alcaldicio. No obstante, fijamos la fecha en que comenzó a decursar el término de 20 días en cuestión a partir de la notificación formal de dicha ordenanza, efectuada mediante un escrito de notificación particular que vino acompañado con una copia de ésta. Resaltamos así la importancia para los fines que aquí nos conciernen de una notificación clara y eficaz de la ordenanza o resolución cuya ejecución se pretende detener. Finalmente, en Corrada v. Asamblea Municipal, 79 D.P.R. 365, 368 (1956) resolvimos que la impugnación judicial de un acuerdo de la Asamblea Municipal de Morovis, presentada casi tres meses después de la fecha en que la Asamblea tomó dicho acuerdo, no era tardío porque los afectados por éste no habían sido notificados del mismo antes. Expresamente resolvimos que el término de caducidad en cuestión comenzaba a decursar a partir "de la fecha en que el acuerdo, resolución u orden haya sido notificado a la parte perjudicada."

En resumen, pues, con arreglo a nuestra reiterada norma jurisprudencial, la fecha en que comienza a transcurrir el término de 20 días del Art. 15.002 es aquella cuando ha ocurrido la

notificación adecuada de la ejecución del acto legislativo municipal que se quiere detener.

En el caso de autos, la ejecución de la Resolución Núm. 64 se procuró por primera y única vez mediante la estipulación que las autoridades municipales salientes la presentaron al foro de instancia en el caso de autos. Por ello la ejecución de dicha Resolución no comenzó hasta que se archivó en autos la sentencia del foro de instancia dándole efectividad a lo dispuesto en la Resolución en cuestión. Es a partir de ese momento--el 16 de enero de 2001--que comenzó a decursar el término de caducidad del Art. 15002 en el caso de autos. Hasta entonces las nuevas autoridades municipales que presentaron la moción de reconsideración que aquí nos concierne no habían tenido una notificación cabal de la ejecución de la Resolución Núm. 64. No podían haber procurado la suspensión de la ejecución de la Resolución aludida, según se provee en el inciso (b) del Art. 15.002, porque no había habido ninguna ejecución que suspender hasta que se archivó en autos la sentencia del foro de instancia. En ese momento comenzó a decursar el término que aquí nos concierne.

Nótese que en cuanto a cuál es el momento efectivo de la notificación, el caso de autos es muy distinto al de Acevedo v. Asamblea Mun. San Juan, supra, mencionado antes. Allí resolvimos que era tardía la acción judicial que el Alcalde de San Juan instó como parte perjudicada el 24 de agosto de 1989, en contra de su propia Asamblea Municipal, para que se declarara nula la ordenanza municipal mediante la cual dicha Asamblea había aprobado finalmente el presupuesto municipal el 28 de junio de 1989. Determinamos entonces que la ordenanza en cuestión le había sido notificada

oficialmente al Alcalde el 10 de julio de 1989, por lo que el Alcalde había tenido hasta el 30 de julio para presentar su acción en el Tribunal Superior. Como puede observarse, en dicho caso no existía una situación de una administración entrante que cuestionaba la actuación de una administración saliente, que actuó luego de perder las elecciones. Allí el Alcalde era parte de la misma administración que la Asamblea Municipal, con la cual venía sosteniendo una contienda sobre el asunto de la ordenanza. El Alcalde había estado involucrado con dicho asunto desde sus inicios y estaba enterado de la acción de la Asamblea desde que ésta ocurrió. Además, había sido notificado posteriormente de manera formal y definitiva de la ordenanza en cuestión, que el Alcalde ya había vetado en una ocasión anterior. Era, pues, una situación claramente distinguible de la del caso de autos, que es *sui generis*, en el cual la parte disputante nunca fue notificada formalmente de la resolución en cuestión hasta que se dictó y archivó la sentencia del foro de instancia referida antes.

En efecto, el error de los foros *a quo* al aplicar aquí el término de caducidad referido como lo hicieron, se hace especialmente patente al considerar que su dictamen requería una acción prácticamente imposible de realizar de parte de los que solicitaron dicha reconsideración. La Resolución Núm. 64, que según los foros judiciales *a quo* debió ser impugnada estrictamente dentro de los 20 días de haberse aprobado, fue emitida por la Asamblea Municipal saliente el 19 de diciembre de 2000, y firmada por el Alcalde saliente el 20 de diciembre de 2000. Según dichos foros, el término para impugnarla judicialmente vencía el 9 de enero de 2001. Pero resulta que la nueva administración del municipio que solicitó

la reconsideración en cuestión no tomó juramento hasta el 8 de enero de 2001. No podían actuar hasta entonces porque aún no eran partes perjudicadas. Véase, Acevedo v. Asamblea Municipal San Juan, *supra*. Más aun, no era posible que en el mismo día en que juraron sus cargos el nuevo Alcalde y la nueva Asamblea Municipal, éstos dejasen a un lado los actos protocolarios de rigor del día, para reunirse en una primera sesión de trabajo, sin agenda o notificación previa, sin los documentos pertinentes, sin haberse nombrado los funcionarios ejecutivos y clericales del Municipio, para discutir una resolución de la administración saliente, que hasta entonces no les perjudicaba, que probablemente no era conocida de ningún modo por todos los concernidos, y cuyo único efecto había sido provocar una sentencia que todavía no había sido notificada a las nuevas autoridades municipales, para entonces contratar una representación legal, para que a más tardar el día siguiente impugnase la Resolución referida. En términos prácticos, no era posible ni concebible realizar todas estas gestiones por la incipiente administración municipal, antes de que supuestamente expirase el término en cuestión el 9 de enero de 2001. Los foros *a quo*, al emitir su erróneo dictamen, en efecto requirieron una acción que era sencillamente irrealizable. Si hubiesen tenido en cuenta lo que hemos dispuesto antes de que los tribunales no deben interpretar las disposiciones de una ley de modo que conduzcan a resultados irrazonables o absurdos, PARDAVCO, Inc. v. Secretario de Hacienda, 104 D.P.R. 65 (1975); Atiles v. Comisión Industrial, 77 D.P.R. 16 (1954), quizás se hubiesen percatado de que no era realmente aplicable aquí el término aludido de la forma en que ellos lo dispusieron.

Conforme a todo lo anterior, cuando las nuevas autoridades municipales presentaron su moción de reconsideración el 31 de enero de 2001 con respecto a la sentencia del foro de instancia archivada en autos el 16 de enero de ese año, no había caducado aún el término de 20 días que dispone el Art. 15.002(b) para suspender judicialmente la ejecución de una ordenanza o resolución municipal. Caducaba el 5 de febrero de ese año. Al resolver de este modo, armonizamos el interés público en impartirle certeza y finalidad a las actuaciones del gobierno municipal, Acevedo v. Asamblea Mun. San Juan, *supra*, a la pág. 187, con la fundamental exigencia del debido proceso de ley de que la parte afectada por la ejecución de una ordenanza o resolución municipal sea debidamente notificada de dicha ejecución. Río Construction Corp. v. Mun. de Caguas, *supra*; Nogama Const. Corp. v. Mun. de Aibonito, *supra*; Corrada v. Asamblea Municipal, *supra*. Nuestro dictamen aquí, además, asegura que ninguna administración municipal saliente habrá de utilizar el período de tiempo que transcurre entre las elecciones del país y la toma de posesión de los nuevos incumbentes para soslayar las normas fundamentales que rigen la contratación municipal y el buen manejo de los fondos públicos.

Por los fundamentos expuestos, pues, resolveríamos que el asunto intermediario de si la Resolución Núm. 64 fue cuestionada a tiempo de ningún modo debió convertirse en el fundamento para que los foros judiciales soslayaran la fundamental obligación judicial de examinar con cautela la cuestión verdaderamente medular de si en el caso de autos existía un contrato municipal válido.

Jaime B. Fuster Berlingeri
Juez Asociado