Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL X

| WASHINGTON FEDERAL CONSULTING GROUP, LLC<br><br>Apelados<br><br>V.<br><br>MUNICIPIO DE GUAYANILLA REPRESENTADO POR EL HON. RAÚL RIVERA RODRÍGUEZ, ALCALDE<br><br>Apelantes | KLAN202300733 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022CV00994<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2023.

El 17 de agosto de 2023, compareció ante este Tribunal de Apelaciones, el Municipio de Guayanilla, por conducto de su representación legal (en adelante, parte apelante o Municipio), por medio de recurso de *Apelación*. Mediante este, el Municipio nos solicita que revoquemos la *Sentencia* emitida el 14 de junio de 2023, y notificada el 15 de junio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Ponce. En virtud de la aludida *Sentencia*, el foro *a quo* declaró Ha Lugar la *Moción Solicitando Sentencia Sumaria* presentada por Washington Federal Consulting Group, LLC (en adelante parte apelada o Washington Federal Consulting Group), y condenó al Municipio a pagarle a esta, la suma de quince mil cuatrocientos setenta y cinco dólares ($15,475.00), más tres mil dólares ($3,000) por concepto de honorarios de abogado.

Número Identificador

SEN2023 _____

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia* apelada. Consecuentemente, se desestima la *Demanda* incoada en contra del Municipio.

**I**

El recurso que nos ocupa tiene su génesis en una *Demanda* sobre Cobro de Dinero, instada el 21 de abril de 2022, por Washington Federal Consulting Group, en contra del Municipio de Guayanilla, en la cual reclamó la suma de quince mil cuatrocientos setenta y cinco dólares ($15,475.00), por concepto de alegados servicios prestados en virtud del *Contrato De Servicios Profesionales* número 2021-000099 suscrito el 1 de septiembre de 2020.

El Municipio refutó lo alegado por la parte apelada mediante la *Contestación a Demanda*, presentada el 5 de julio de 2022. Entre sus defensas afirmativas, alegó que, la validez del contrato estaba sujeta a la aplicación de las disposiciones del Artículo 6 de la Ley Núm. 237-2004, *infra,* y conforme a estas, el contrato era nulo e ineficaz. Acotó, además, que los pagos por los servicios profesionales ofrecidos al programa federal de la *Federal Transit Administration* estaban sujetos a ciertos requerimientos, que la parte apelada había incumplido, así como a la aprobación de las facturas por parte de la agencia federal encargada del manejo de dichos fondos federales.

Subsiguientemente, el 3 de marzo de 2023, la parte apelada interpuso ante el foro primario, *Moción Solicitando Sentencia Sumaria* mediante la cual, solicitó que se condenara al Municipio a pagarle la suma de quince mil cuatrocientos setenta y cinco dólares ($15,475.00), más honorarios de abogado.

En respuesta a la referida moción dispositiva, el 28 de abril de 2023, el Municipio presentó la *Oposición a "Moción Solicitando Sentencia Sumaria"*. Arguyó que, la parte apelada no había cumplido con los requisitos ni el formato, según las disposiciones de la Regla

36 de Procedimiento Civil, *infra*. Sin renunciar a este planteamiento, procedió a controvertir los hechos esbozados como incontrovertidos por la parte apelada. En esencia, su contención se circunscribe a dos planteamientos medulares: 1) que está en controversia la vigencia del contrato y 2) la no disponibilidad de fondos al momento de la contratación en cuestión. Arguyó que, de los Anejos 3A y 3B de la *Moción Solicitando Sentencia Sumaria*, no surgía la fecha exacta de la vigencia del contrato, por lo que, no se perfeccionó un contrato válido, en ausencia de un término específico del contrato. Añadió que, la cláusula tercera del Anejo 5 de la aludida moción dispositiva, establece una vigencia del contrato del 25 de mayo al 30 de junio de 2021, por lo que existía controversia en torno a la vigencia del mismo. Por otro lado, acotó que, no existía evidencia de la disponibilidad de fondos al momento de suscribirse el contrato número 2021-000099.

Atendidas las posturas de ambas partes, el foro primario dictó la *Sentencia,* cuya revisión nos atiene, en la que, eminentemente, adoptó los hechos reseñados por la parte apelada como incontrovertidos. Consecuentemente, condenó al Municipio a pagarle a esta, la suma de quince mil cuatrocientos setenta y cinco dólares ($15,475.00), más tres mil dólares ($3,000) por concepto de honorarios de abogado.

Inconforme con lo dictaminado, el 30 de junio de 2023, el Municipio presentó *Solicitud de Reconsideración de Sentencia*, a la cual, se opuso la parte apelada el 13 de julio de 2023. En igual fecha, mediante *Resolución* notificada el 18 de julio de 2023, el foro *a quo,* declaró No Ha Lugar la aludida *Solicitud de Reconsideración de Sentencia* presentada por el Municipio.

Aún en desacuerdo con lo resuelto por la primera instancia judicial, el 17 de agosto de 2023, el Municipio compareció ante este Tribunal de Apelaciones, mediante el recurso de *Apelación* que nos

ocupa. En su recurso, la parte apelante esgrime el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al declarar No Ha Lugar la *Solicitud de Reconsideración de Sentencia* (Apéndice a la pág. A144) presentada por la parte compareciente, e imponer al Municipio el pago de la suma de $15,475.00, aún estando ello en contravención con las disposiciones del Artículo 6 de la Ley Núm. 237-2004, 3 LPRA sec. 8611 *et seq.*

El 21 de agosto de 2023, emitimos *Resolución*, mediante la cual le ordenamos a la parte apelante que, en o antes del viernes 25 de agosto de 2023, nos acreditara haber notificado copia del recurso de epígrafe a la parte apelada, ello, de conformidad con la Regla 13 (B) del Reglamento de este Tribunal[1] y al Tribunal de Primera Instancia, conforme a lo dispuesto por la Regla 14 de las Reglas del Tribunal de Apelaciones[2]. Le apercibimos que, el incumplimiento con lo ordenado daría lugar a la desestimación del recurso. De otra parte, le concedimos a la parte apelada, hasta el lunes 18 de septiembre de 2023, para que expusiera su posición en torno al recurso de epígrafe, con el correspondiente apercibimiento de que, transcurrido el término dispuesto, el recurso se tendría por perfeccionado para su adjudicación final.  En cumplimiento con lo ordenado, la parte apelante presentó el 25 de agosto de 2023, la *Moción en Cumplimiento de Orden*, mediante la cual, nos acreditó la debida notificación del recurso.

Por su parte, el 15 de septiembre de 2023, compareció ante este foro revisor, la parte apelada mediante *Contestación a la Apelación*. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver el recurso ante nuestra consideración.

---

[1] 4 LPRA Ap. XXII-B, R. 13 (B).
[2] 4 LPRA Ap. XXII-B, R. 14.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011); *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pueblo v. Hernández Doble*, supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble*, supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 753; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, supra, pág. 356.

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial

está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Véase, además, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle Abello*, 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023), *Pueblo v. Rivera Montalvo*, supra, citando a *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra; *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997); *Hietel v. PRTC*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra.

### B. Contratación Gubernamental

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo

para producirlas. Art. 1042 del Código Civil[3], 31 LPRA ant. sec. 2992; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR 263 (2021). En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. V. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. 31 LPRA sec. 3372; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín et al. v. Pfizer Pharm.,* supra; *Burgos López et al. v. Condado Plaza*, supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no

---

[3] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, los hechos que dan base a esta, dígase la suscripción del contrato en controversia, tuvo su lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

Por su parte, [l]a Constitución de Puerto Rico establece que "[so]lo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1, ed.2016, pág. 444. En virtud de este mandato constitucional, [nuestra Alta Curia ha] sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.*, 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730 (2013). Ello, en miras de que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 997 (2020).

A esos fines, la Asamblea Legislativa ha desarrollado un andamiaje de distintos estatutos que tienen como propósito garantizar el control fiscal y regular la contratación gubernamental. *Vicar Builders v. ELA et al.,* supra, pág. 262. De igual modo, [nuestro Tribunal Supremo] ha afinado los preceptos de una sana administración pública mediante nuestra jurisprudencia. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 741. En consecuencia, la facultad del Gobierno de Puerto Rico y de sus entidades para contratar y comprometer fondos públicos está limitada por estas normas.[4]

---

[4] *Id,* págs. 997-998.

A la luz de lo anterior, la Alta Curia ha determinado que todo contrato gubernamental debe cumplir con los requisitos siguientes: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Los contratos gubernamentales deben cumplir rigurosamente con cada una de estas exigencias, "ya que sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas". *Vicar Builders v. ELA et al.,* supra, pág. 264.

Respecto a la contratación gubernamental, el Estado está obligado por imperativo constitucional a manejar los fondos públicos con los principios fiduciarios y éticos más altos. *Jaap Corp. v. Depto. Estado et al.,* supra, pág.739; *CFS. v. Unión de Médicos,* 170 DPR 443, 452 (2007).[5]

Atinente a la controversia que nos ocupa, el Código Municipal de Puerto Rico, Ley Núm. 107 de 14 de agosto de 2020, según enmendada, 21 LPRA sec. 7001 *et seq.,* establece en su Art. 2.014, que todo contrato otorgado por un municipio tendrá que cumplir con los siguientes requisitos:

(a)   que conste por escrito y esté suscrito por todas las partes;

(b)   que su vigencia sea prospectiva y que no incluya cláusulas de renovación automática ni tácita reconducción;

(c)   que contenga una cláusula en la cual se identifica la partida presupuestaria que sufragará el contrato;

**(d)   que cumpla con las disposiciones de la Ley 237-2004, según enmendada, cuando se trate de [un] contrato de servicios profesionales;**

---

[5] *Ramiro Rodríguez Ramos y otros, recurridos, v. ELA de PR y otros, peticionarios,* 190 DPR 448(2014).

(e) cualquier otro requisito contemplado por ley. Además, todo contrato será registrado en la Oficina del Contralor de Puerto Rico, en cumplimiento con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.[6] (Énfasis nuestro).

En particular, el Art. 2 de la Ley Núm. 237-2004, 3 LPRA sec. 8612, establece claramente que la contratación gubernamental de servicios profesionales debe ser la excepción y que solo se utilizará "cuando la entidad gubernamental no cuente [o] no pueda utilizar los recursos internos a ser contratados, o cuando el *expertise,* destreza o experiencia del contratista sea necesario para la consecución de los fines para lo cual es contratado". Este artículo también exige que, al momento de contratar los servicios de un contratista, el Estado tome en cuenta "la necesidad real de los servicios a contratarse, la situación económica y el presupuesto de la entidad gubernamental contratante".[7]

Además de establecer que la contratación gubernamental de servicios profesionales debe ser excepcional, la Ley Núm. 237-2004, *supra,* enumera en su Art. 3, una serie de requisitos, tanto de forma como sustantivos, con los cuales debe cumplir todo contrato entre el Estado y un contratista. 3 LPRA sec. 8613. En específico, este Artículo requiere:

(a) El otorgamiento de un contrato de servicios profesionales o consultivos entre un contratista y el Gobierno **deberá ser prospectivo**. Toda entidad gubernamental pagará únicamente por servicios rendidos.

(b) Debe formalizarse por escrito e incluirse en el texto del mismo la disposición legal que faculta a la entidad gubernamental a otorgar contratos. (Énfasis suplido). *Íd.*

El resto de los incisos de esta disposición legal detalla la información que debe contener el contrato sobre el contratista, los servicios que prestará, la vigencia del contrato, la cuantía máxima a

---

[6] 21 LPRA sec. 7173.
[7] *Íd,* págs. 458-459.

pagarse y la forma de pago. *Íd.* Más adelante, el Art. 5 de la misma ley, 3 LPRA sec. 8615, requiere que se incluya en el contrato una lista extensa de cláusulas mandatorias.

Cabe mencionar que, con relación a órdenes de compra o servicios realizados, la Ley Núm. 237-2004, *supra,* incorporó como Art. 6, 3 LPRA sec. 8616, lo siguiente:

> Toda orden de compra o servicio realizad[o] después de la fecha de efectividad de esta Ley por cualquier agencia, departamento, corporación pública o instrumentalidad del Estado Libre Asociado **(a) deberá ser prospectiva**, **(b) deberá identificar la partida presupuestaria de la cual se pagará dicha orden de compra o servicio** y, (c) agencia, departamento, corporación pública o instrumentalidad deberá entregarle al suplidor (contratista) previo a la prestación de los servicios la orden de compra generada por su sistema de contabilidad, a los efectos de que los gastos incurridos bajo la orden de compra están incluidos en el presupuesto. Cualquier orden de compra o servicio que no cumpla con los requisitos aquí establecidos será nula e ineficaz. (Énfasis nuestro).

Vemos, pues, que tanto la Ley Núm. 237-2004, *supra,* como el Código Municipal, *supra,* establecen que todo contrato gubernamental de servicios profesionales o consultivos, categoría que incluye la prestación de servicios legales, solo será válido si se hace constar por escrito y tiene vigencia prospectiva. Sin lugar a dudas, la legislación aplicable, prohíbe la contratación verbal y retroactiva de servicios profesionales y consultivos.[8] Es preciso destacar que, para que el mismo sea válido y eficaz, además, deberá **identificar la partida presupuestaria de la cual se pagarán los servicios rendidos**.[9] Por tanto, en ausencia de los requisitos antes dispuestos, se entenderá que no se perfeccionó un contrato válido entre las partes, por lo que será nulo e ineficaz.

Nuestro Alto Foro ha señalado que "[l]as distintas disposiciones estatutarias [que] regul[an] la realización de obras y contratación de servicios para el Estado y sus agencias e

---

[8] *Íd,* pág. 459.
[9] Véase 21 LPRA sec. 7173c; 3 LPRA sec. 8616b.

instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento." *Ríos v. Municipio de Isabela*, 159 DPR 839 (2003), citando a *Cancel v. Municipio de San Juan*, 101 DPR 296, 300 (1973).

### C. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrad Assurance Company*, 2023 TSPR 120, 213 DPR ___ (2023); *Segarra Rivera v. Int'l_Shipping et al.*, 208 DPR 964 (2022); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare Group, LCC.*, 205 DPR 796, 290 (2020), *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015); *Rosado Reyes v. Global Healthcare Group, LCC.,* supra, pág. 290.

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales. *Alicea Pérez v. Seguros Múltiples*, 210 DPR 71 (2022); *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 979; *Rosado Reyes v. Global Healthcare Group, LCC.,* supra, pág.

290; *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 334-335; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018); *Velázquez Ortiz v. Gobierno Mun. De Humacao,* 197 DPR 656, 662-663 (2017). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 335; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980; *Lugo Montalvo v. Sol Meliá Vacation,* supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi,* 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento

admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 336.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3(e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 335-336.

Cónsono con lo antes indicado, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Ferrer et al. v. PRTC*, 209 DPR 574 (2022); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010). Las meras afirmaciones

no bastan. *Id.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *Ferrer et al. v. PRTC*, supra, pág. 582; *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 336. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el Foro Apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Ferrer et al. v. PRTC*, supra, pág. 583; *Meléndez González et al. v. M. Cuebas*, supra, pág. 679. Además, está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.* Lo anterior debido a que, solo procede dictar sentencia sumaria en los casos claros y cualquier duda existente sobre los hechos materiales ha de

resolverse en contra de la parte promovente. *Ferrer et al. v. PRTC,* supra, pág. 583.

Establecida la normativa jurídica que gobierna el presente recurso, procedemos a aplicarla al caso ante nuestra consideración.

**III**

En su comparecencia ante este foro revisor, arguye el Municipio que, incidió el foro apelado al declarar No Ha Lugar la *Solicitud de Reconsideración de Sentencia,* presentada por la parte compareciente, y al imponer al Municipio el pago de la suma de quince mil cuatrocientos setenta y cinco dólares ($15,475.00), aun estando ello en contravención con las disposiciones del Art. 6 de la Ley Núm. 237-2004, *supra.* Evaluado el expediente de autos, concluimos que le asiste la razón a la parte apelante. Veamos.

Como cuestión de umbral, nos corresponde evaluar si las partes cumplieron cabalmente con las disposiciones de la Regla 36 de Procedimiento Civil, *supra.* Debemos determinar, pues, si la parte apelada y promovente de la moción de sentencia sumaria, incluyó: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez*

*García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 336.

Por otro lado, debemos examinar si el Municipio, presentó una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, están en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *Ferrer et al. v. PRTC*, supra, pág. 582; *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 336. Además, si enumeró los hechos que no están en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* Por último, debemos determinar si, la parte apelante esbozó las razones por las cuales no se debía dictar sentencia sumaria, con la correspondiente argumentación del derecho aplicable.

En su moción de sentencia sumaria instada ante el foro primario, la parte apelada esbozó los siguientes hechos que, a su juicio, no están en controversia:

> 1. El 9 de julio de 2020, el Municipio, publicó en el periódico, Primera Hora, una solicitud de propuestas para Servicios Profesionales para la Administración del Programa Federal de la "Federal Transit Administration". ***Véase Anejo 1.***

> 2. El 13 de julio de 2020, el demandante, presentó su propuesta al proceso de competencia anunciado en el aviso público (Edicto) publicado el 9 de julio de 2020. ***Véase Anejos 2A y 2B.***

> 3. Luego de la evaluación y correspondiente análisis de las propuestas recibida[s] por el Municipio, el 1 de septiembre de 2020, las partes de epígrafe suscribieron el contrato número 2021-000099 por la suma de $22,000.00, bajo la categoría de servicios profesionales, con una vigencia hasta el 30 de junio de 2021. El referido contrato fue debidamente registrado en la Oficina del Contralor de Puerto Rico el 17 de septiembre de 2020. ***Véase Anejos 3A y 3B.*** De conformidad con el contrato suscrito por las partes, el Municipio pagaría a la demandante la cantidad máxima de $2,000.00 mensuales.

> 4. En virtud del referido contrato y una vez certificada la partida (certificación de partida número 70-13-04-94.11) para el pago de los servicios contratados, la

demandante comenzó a ofrecer los servicios y a facturar según el contrato. ***Véase Anejo 4.***

5. El 6 de noviembre de 2020 se celebraron elecciones en Puerto Rico. En el caso particular del Municipio de Guayanilla, hubo un cambio de administración mediante la cual a partir de enero de 202[1] comenzó a administrar el municipio, su alcalde electo, Hon. Raúl Rivera Rodríguez, quien sustituyó a su predecesor, el Lic. Nelson Torres Yordán.

6. A pesar del cambio de administración en el municipio, el demandante continuó ofreciendo servicios al municipio, según lo pactado en el contrato. Inclusive en mayo de 2021, las partes enmendaron (2021-000099A) el contrato a los efectos de aclarar la vigencia del contrato y la partida a utilizarse para el pago del mismo por los servicios rendidos. ***Véase Anejo 5.***

7. A pesar de que el demandante prestó los servicios para los que fue contratado, consiguió fondos al Municipio a través de distintos programas federales y presentó las facturas por los servicios realizados, el Municipio aún no ha pagado por los servicios rendidos. A esos efectos, la demandante present[ó] las que se desglosan a continuación, las cuales no han sido pagadas ni en todo ni parcialmente:

| Periodo de Facturación | Fecha Facturación | Cuantía Facturada |
|---|---|---|
| Sept 1-30, 2020 | Sep 30, 2020 | $2,000.00 |
| Oct 1-31, 2020 | Oct. 31, 2020 | $1,125.00 |
| Nov. 1-30, 2020 | N/A | N/A |
| Dic. 1-31, 2020 | Dic. 31, 2020 | $ 350.00 |
| Jan 1-31, 2021 | Jan 31, 2021 | $2,000.00 |
| Feb 1-28, 2021 | Feb, 28, 2021 | $2,000.00 |
| Mar 1-31, 2021 | Mar, 31, 2021 | $2,000.00 |
| Apr 1-30, 2021 | Apr 30, 2021 | $2,000.00 |
| May 1-31, 2021 | May 31, 2021 | $2,000.00 |
| Jun 1-30, 2021 | Jun 30, 2021 | $2,000.00 |

**TOTAL ADEUDADO** **$15,475.00**

8. El demandante ha realizado múltiples gestiones de cobro con el demandado, Municipio de Guayanilla, para el pago de la deuda contraída por el Municipio y las mismas han sido infructuosas. Así las cosas, el Municipio adeuda al compareciente la cantidad de $15,475.00. La referida deuda es una que está vencida, es líquida y exigible.

Como mencionamos anteriormente, el Municipio, por su parte, instó ante el foro *a quo, Oposición a "Moción Solicitando Sentencia Sumaria"*. Arguyó que, la parte apelada no había cumplido con los requisitos ni el formato, según las disposiciones de la Regla 36 de Procedimiento Civil, *infra.* No obstante, y sin renunciar a este

planteamiento, procedió a controvertir los hechos esbozados como incontrovertidos por la parte apelada.

En esencia, la contención del Municipio se circunscribió a dos planteamientos medulares: 1) que está en controversia la vigencia del contrato y 2) la no disponibilidad de fondos al momento de la contratación en cuestión. El Municipio aduce que, de los Anejos 3A y 3B de la *Moción Solicitando Sentencia Sumaria*, no surgía la fecha exacta de la vigencia del contrato, por lo que, no se perfeccionó un contrato válido, en ausencia de un término específico del contrato. Añadió que, la cláusula tercera del Anejo 5 de la aludida moción dispositiva, establece una vigencia del contrato del 25 de mayo al 30 de junio de 2021, por lo que existía controversia en torno a la vigencia del mismo. Por otro lado, adujo que, no existía evidencia de la disponibilidad de fondos al momento de suscribirse el contrato número 2021-000099.

Colegimos que las partes cumplieron, en esencia, con las disposiciones de la Regla 36 de Procedimiento Civil, *supra*. Dicho lo anterior, al adentrarnos en las controversias que nos corresponde dirimir, vemos que estas son, eminentemente, controversias de derecho.

Según surge del tracto procesal, el 1 de septiembre de 2020, las partes de epígrafe suscribieron un contrato de servicios profesionales (2021-000099) por la suma de veintidós mil dólares ($22,000.00). En la SEGUNDA cláusula del referido contrato, se establece que "[este] Plan de Trabajo se redactará según el Año Fiscal Federal el cual comenzará el 1 de octubre de 2019 y terminará el 30 de septiembre de 2020". De igual manera, en su TERCERA cláusula dispone que "[e]ste contrato entrará en vigor desde el 1 de septiembre de 20 y se extenderá hasta el 30 de junio de 2020". Establecido esto, notamos que, lo dispuesto en el aludido contrato no solo plantea una controversia con relación a su vigencia, sino

que, además, plantea que hay incertidumbre con relación a la disponibilidad de fondos luego del 30 de septiembre de 2020, fecha de cierre del año fiscal federal. Cabe destacar que, en el *Contrato De Servicios Profesionales* no se identifican o especifican las partidas presupuestarias, de las cuales ha de pagarse a la parte apelada por los servicios rendidos.

Conforme surge del expediente, el 3 de septiembre de 2020, entiéndase, **en una fecha posterior a la otorgación del contrato**, el Municipio expidió una Certificación en la que se señala que:

> "Los fondos a utilizarse para el pago del contrato #2021-000099[,] están disponibles por reembolso de gastos a través del Acuerdo Interagencial entre el Municipio de Guayanilla y la oficina de coordinación Federal de la Autoridad de Carreteras de Puerto Rico para el Proyecto PR-2019-031-00, el cual se utilizará según el mismo para gastos operacionales y administrativos del Sistema de Transportación del Municipio de Guayanilla por la cantidad de hasta $102,000.00."

De una revisión de la antes mencionada Certificación, no se desprende que el Municipio hubiese identificado previo a la otorgación del contrato en cuestión, una partida específica para sufragar el pago de los servicios profesionales atinentes a la contratación en cuestión. La Certificación antes reseñada, además de haberse emitido en una fecha posterior a la otorgación del contrato, tampoco dispone cuál es la partida en particular en la que se establece la disponibilidad de fondos para el pago del aludido contrato.

Como bien se ha reseñado, la legislación aplicable en el caso ante nos dispone que, toda contratación gubernamental de servicios profesionales deberá cumplir, entre otros, con los siguientes requisitos: (1) deberá ser prospectivo, (2) constar por escrito[10], y (3) deberá identificar la partida presupuestaria de la cual se pagarán los servicios profesionales.[11]

---

[10] Ley Núm. 237-2004, *supra*, 3 LPRA sec. 8613.
[11] Ley Núm. 237-2004, *supra*, 3 LPRA sec. 8616.

De lo planteado anteriormente, notamos que, al suscribir el contrato de servicios profesionales, las partes no dieron cumplimiento a los requisitos establecidos para la contratación gubernamental. Pues, además de no incluir en el contrato la partida presupuestaria para los servicios contratados –lo cual convierte el contrato en uno nulo e ineficaz–, posteriormente, se intenta justificar la partida presupuestaria con la referida Certificación que, como ya mencionamos, no identifica o especifica las mismas. Ello, en contravención con las disposiciones de la Ley Núm. 237-2004, *supra*, así como también, con el Código Municipal, *supra*.[12]

Por otro lado, el 25 de mayo de 2021, las partes convenientemente, intentaron enmendar o subsanar las deficiencias, antes mencionadas mediante *Addendum* (2021-000099A). Empero, como explicaremos en adelante, dichas enmiendas son contrarias a la ley y por ende, resultan ser inoficiosas. Veamos.

En la PRIMERA cláusula del aludido *Addendum* se establece que: "[e]sta enmienda tiene como propósito de modificar el error involuntario relacionado con el contrato original donde se estableció que la vigencia era desde el 1 de septiembre del 20 hasta el 30 de junio de 2020, donde debió decir 1 de septiembre del 2020 hasta el 30 de junio del 2021"; además, se "modifica la partida #70-13-04-94.11 para establecer la partida correcta **#70-13-08-94.11 (G02019FTA)**".

Sin embargo, es meritorio destacar que, de la Certificación que obra en autos, no se desprende la disponibilidad de fondos en la partida número 70-13-08-94.11 (GO2019FTA), asignados para el pago de los servicios profesionales reclamados, con relación al referido contrato y a la fecha de suscripción de estos.

---

[12] Código Municipal de Puerto Rico, *supra*, 21 LPRA sec. 7173.

Con relación a la fecha de vigencia del contrato, nótese que, el *Addendum* –de haber sido válido el contrato original– implica el establecimiento de una vigencia retroactiva, lo cual está expresamente prohibido por ley. Como ya hemos esbozado, entre los requisitos para la validez de un contrato gubernamental de servicios profesionales, es menester que, el mismo conste por escrito y que **tenga vigencia prospectiva**.[13]

A nuestro juicio, al no haberse dado cumplimiento a las leyes vigentes y aplicables para la contratación gubernamental, resulta forzoso concluir que no se perfeccionó un contrato válido entre las partes. En vista de ello, nos encontramos ante un contrato nulo, pues no solo omite identificar o especificar la partida presupuestaria, sino que, además, su *Addendum* establece una vigencia retroactiva. En fin, por tratarse de un contrato nulo, el mismo no era susceptible de ser subsanado mediante el aludido *Addendum.* Por consiguiente, el mismo carece de eficacia y validez. A esos efectos, el *Addendum* suscrito por las partes resulta inoficioso.

En resumen, si bien nuestra Alta Curia ha reconocido que las decisiones del foro primario son merecedoras de deferencia judicial, es sabido que la misma no es absoluta y puede ser preterida en ciertas instancias. Concerniente al caso ante nos, es importante reiterar que, en virtud del mandato constitucional en cuanto a la disposición de fondos públicos, tenemos el deber de velar por el manejo ético y apropiado de los mismos.[14] A raíz de ello, nos atañe revisar la determinación del foro primario, en la cual dictó sentencia sumaria, a favor de la parte apelada.

---

[13] Ley Núm. 237-2004, *supra*, 3 LPRA sec. 8613
[14] *Vicar Builders v. ELA et al.*, supra, pág. 262; *Rodríguez Ramos et al. v. ELA et al.,* supra, pág. 456; *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 739

Por tanto, luego de una ponderada revisión *de novo* de la moción de sentencia sumaria, concluimos que, en el caso de marras no se perfeccionó un contrato válido entre las partes conforme a la Ley Núm. 237-2004, *supra*, sobre la contratación gubernamental de servicios profesionales.[15] Ante el incumplimiento con sus requisitos, estamos ante un contrato nulo que carece de toda eficacia y validez. Conforme a la normativa jurídica antes reseñada, incidió el foro primario al dictar sentencia sumariamente a favor de la parte apelada, así como al declarar No Ha Lugar, la *Solicitud de Reconsideración de Sentencia* presentada por la parte demandada apelante.

**IV**

Por los fundamentos antes expuestos, se *revoca* la *Sentencia* apelada. Consecuentemente, se desestima la Demanda incoada por Washington Federal Consulting Group, LLC, en contra del Municipio de Guayanilla.

Por último, disponemos que, a raíz de lo aquí resuelto, aunque no se desprende del expediente ante nuestra consideración que el Municipio haya realizado algún desembolso de fondos públicos a favor de la parte apelada, en virtud del contrato en controversia, de así haber ocurrido, la parte apelada deberá con urgencia, proceder con la devolución de los mismos.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Conforme, además, al Código Municipal de Puerto Rico, *supra*, 21 LPRA sec. 7173.