ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| KALED HMEIDAN ALSMAR<br><br>Parte Apelante<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE YAUCO<br><br>Parte Apelada | KLAN202400258 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Yauco en Sabana Grande<br><br>Caso Núm.: PO2018CV00352<br><br>Sobre: Desahucio y Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de abril de 2024.

Compareció ante este Tribunal la parte apelante, Kaled Hmeidan (en adelante, "Hmeidan" o "Apelante"), mediante recurso de apelación presentado el 15 de marzo de 2024. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Yauco en Sabana Grande (en adelante, "TPI"), el 11 de diciembre de 2023. Mediante el referido dictamen, el TPI desestimó la "**Demanda**" presentada por el Apelante y declaró "Con Lugar" la "**Reconvención**" presentada por el Municipio de Yauco (en adelante, "Municipio" o "Apelado").

Por los fundamentos que expondremos a continuación, *modificamos* la *Sentencia* apelada y así modificada, *confirmamos.*

**I.**

El caso de autos tuvo su origen con la presentación de una "**Demanda**" de desahucio y cobro de dinero, por parte de Hmeidan en contra del Apelado. En esencia, el Apelante sostuvo que el Municipio incumplió con los términos y condiciones del *Contrato de Compraventa y Arrendamiento* suscrito por las partes el 27 de septiembre de 2016. Sobre

el particular, expuso que el Apelado le vendió cierto solar ubicado en la Calle Comercio del Municipio y que le arrendó dicho inmueble al Municipio, obligándose este último a pagar cánones de arrendamiento al igual que los pagos al Centro de Recaudaciones de Ingresos Municipales (en adelante, "CRIM"). Arguyó que el Municipio incumplió con su obligación de pago por ambos conceptos, a tenor con lo pactado entre las partes.

Luego de varios trámites procesales, el 9 de octubre de 2018, el Municipio presentó "**Contestación a la Demanda y Reconvención**". Es preciso destacar que, mediante la "**Reconvención**", el Apelado sostuvo que la compraventa del inmueble en controversia era nula por infringir el derogado Artículo 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372, y el Artículo 9.006 de la también derogada Ley Núm. 81-1991, según enmendada, conocida como la "Ley de Municipios Autónomos de Puerto Rico", 21 LPRA sec. 4456. Planteó, además, que el negocio jurídico oculto tras el contrato de compraventa y arrendamiento fue una donación simulada.

Posteriormente, el 11 de octubre de 2018, Hmeidan presentó una "**Moción de Sentencia Sumaria**". Allí sostuvo que no existía controversia de hechos que impidiese concluir que el Municipio incumplió con los pagos del CRIM y de los cánones de arrendamiento, y, por ende, procedía ordenar el cobro de lo adeudado y el desalojo del inmueble en cuestión. El 15 de noviembre de 2018, el Municipio radicó una "**Moción en Oposición a Moción de Sentencia Sumaria**". En respuesta, el apelado presentó una "**Réplica a Moción en Oposición a Moción de Sentencia Sumaria**".

Así las cosas, el 21 de diciembre de 2018, el TPI dictó una *Sentencia* en la que declaró "Ha Lugar" la "**Demanda**" y ordenó al Apelado al pago de $9,000.00 por concepto de cánones de arrendamiento adeudados, más una cantidad de $18,202.00 por concepto de pagos al CRIM y $2,000.00 por honorarios de abogado, y declaró "No Ha Lugar" la "**Reconvención**" presentada por el Municipio. El 28 de enero de 2019, Hmeidan presentó una "**Moción Solicitando Enmendar Sentencia**" mediante la cual peticionó que se enmendara la *Sentencia* para que se consignaran las

cuantías de las deudas actualizadas. Mediante una *Sentencia Enmendada* emitida el 29 de enero de 2019, el foro primario se reafirmó en sus determinaciones anteriores, le impuso una fianza en apelación al Municipio y condenó a este último al pago de $19,800.00 por concepto de cánones de arrendamiento vencidos y $21,405.00 por concepto de pagos del CRIM adeudados. Se le impuso, además, la suma de $2,000.00 por concepto de honorarios de abogado y ordenó el desalojo de la propiedad en controversia.

Inconforme con dicha determinación, el 19 de febrero de 2019, el Municipio presentó un recurso de apelación, bajo el alfanumérico KLAN201900174. Luego de evaluadas las posturas de ambas partes, un panel hermano de este Tribunal revocó la *Sentencia Enmendada*, tras entender que no procedía disponer de la reclamación por la vía sumaria a esa etapa del proceso, pues entendió que la controversia suscitada debía dilucidarse en un juicio plenario. Así pues, dejó sin efecto la orden de desalojo de la propiedad en cuestión y ordenó la conversión del caso a uno ordinario.

Devuelto el caso ante el TPI y luego de acaecidos múltiples asuntos procesales, el 30 de enero de 2023, se celebró *Conferencia sobre el Estado de los Procedimientos*. Durante la misma, el Apelante planteó que el Municipio no había impugnado la validez de la Ordenanza Municipal Núm. 15, Serie 2016-2017 del ayuntamiento, que tenía como objetivo extender un Plan de Incentivo Municipal para promover el Desarrollo Socio Económico y de Vivienda en el Casco Urbano mediante la venta de solares y estructuras en usufructo (en adelante, "Ordenanza Municipal") y, por tanto, se tenía que asumir que la compraventa era válida. Por su parte, el Apelado planteó que mantenía su postura de que la transacción era nula, según consignado en la "**Reconvención**", pues violentaba disposiciones de la Ley Núm. 81-1991, *supra*. En vista de lo anterior, el foro primario les concedió a las partes un término de quince (15) días para presentar sus planteamientos por escrito.

El 5 de abril de 2023, Hmeidan presentó "**Moción en Cumplimiento de Orden**". Arguyó que el solar en controversia se adquirió mediante la Escritura Núm. 12 de 27 de septiembre de 2016 ante el notario público Antonio Manuel del Toro Sánchez (en adelante, la "Escritura de Compraventa") y que dicha transacción se efectuó bajo las disposiciones de la Ordenanza Municipal. Asimismo, aludió a que el 27 de septiembre de 2016, las partes suscribieron un contrato de arrendamiento sobre el inmueble en controversia. De conformidad con dicho contrato, el Municipio arrendó la propiedad y se obligó a pagar cánones de arrendamiento y el CRIM. Planteó que para iniciar un pleito de impugnación de una ordenanza municipal debe ser instado en un caso paralelo y que el mismo debía incoarse dentro del término de veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo y orden municipal se haya notificado por el Alcalde o funcionario municipal autorizado por escrito por correo regular y certificado, a menos que se disponga otra cosa por Ley.

A tono con ello, aludió a que el Municipio pretendía que se decretara la nulidad de un acto efectuado por el propio ayuntamiento y que pretender obviar la Ordenanza Municipal era lo único que era ilegal. El 14 de abril de 2023, el TPI emitió una *Orden* en la que sostuvo la validez de la Ordenanza Municipal. Sin embargo, el 18 de abril de 2023, el Municipio presentó una "**Moción de Reconsideración y en Solicitud para que se resuelva nulidad de Ordenanza Municipal Núm. 15 Serie 2016-2017 y/o Escritura Pública Núm. 12 del 27 de septiembre de 2016 sobre compraventa**".

Evaluada la misma, el 11 de diciembre de 2023, el foro *a quo* emitió *Sentencia*. Concluyó el TPI que procedía la desestimación de la "**Demanda**", puesto que entendió que la Ordenanza Municipal es nula, ya que autorizó la venta de solares comerciales con un descuento de un 80% del valor de tasación vigente de la propiedad ante el CRIM. Fundamentó su determinación en las disposiciones del Artículo 9.006 de la Ley Núm. 81-1991, *supra*. En vista de dicha conclusión, el foro de instancia declaró la nulidad de la Escritura de Compraventa, pues esta última se basó en una

actuación *ultra vires* del Municipio al aprobar la Ordenanza Municipal, la cual era inconstitucional y nula *ab initio*.

Inconforme, el Apelante presentó "**Moción Solicitando Reconsideración con Relación a 'Sentencia' del 22 de diciembre de 2023**". El 30 de enero de 2024, el foro primario emitió *Orden* mediante la cual declaró "No Ha Lugar" la solicitud de reconsideración. Aún insatisfecho, Hmeidan presentó el recurso de apelación que nos ocupa. Le imputó al TPI la comisión de los siguientes errores:

> **Incidió el TPI, Sala Superior de Yauco en S[á]bana Grande, al declarar nula una ordenanza municipal sin tener jurisdicción, fuera del término de caducidad que establece la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos de Puerto Rico, según enmendada.**

> **Incidió el TPI, Sala Superior de Yauco en S[á]bana Grande, al desestimar la demanda del Apelante, no celebrar un juicio plenario, en contravención al mandato de este propio Tribunal de Apelaciones en el caso KLAN201900174.**

> **Incidió el TPI, Sala Superior de Yauco en S[á]bana Grande, al desestimar la causa de acción de desahucio y cobro de dinero cuando el propio Apelante es dueño de la estructura que el Municipio ha ocupado y se ha aprovechado por seis (6) años sin pagar canon y/o suma de dinero alguna.**

> **Incidió el TPI, Sala Superior de Yauco en S[á]bana Grande, al declarar la nulidad de toda una ordenanza municipal cuando la propia ordenanza establece que sus disposiciones son independientes y separadas unas de otras.**

> **Incidió el TPI, Sala Superior de Yauco en S[á]bana Grande, al desestimar como un hecho -sin juicio plenario o moción dispositiva – que el solar edificado objeto de este caso, al momento de la adquisición por el Apelante, se utilizaba con fines pecuniarios**.

El 12 de abril de 2024, el Municipio presentó "**Alegato en Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

Conforme la exposición de motivos de la derogada Ley de Municipios Autónomos, *supra*, dicha pieza legislativa se aprobó con el fin ulterior de abandonar la visión hasta entonces imperante de que los

municipios eran sólo proveedores de servicios simples. Así, se les delegó un mayor grado de autonomía fiscal y de gobierno propio, con el objetivo de que pudieran cumplir cabalmente con sus responsabilidades. Así pues, el Artículo 1.002 de dicha pieza legislativa reconoce la transferencia de poderes y facultades del Gobierno Estatal, con miras a que se puedan atender las necesidades de cada municipio en Puerto Rico. 21 LPRA sec. 4001 nota (derogada). De conformidad con lo anterior, se instituyó expresamente la autonomía municipal como el ejercicio de los poderes jurídicos, económicos y administrativos sobre asuntos relacionados con el bienestar general de los habitantes. 21 LPRA sec. 4004 (derogada).

Cónsono con lo anterior, las legislaturas municipales tienen facultad para aprobar aquellas ordenanzas necesarias para promover y adelantar su propia política pública, siempre y cuando no estén en contraposición a la establecida por el Estado. López, Fed. Coms. Unidos v. Mun. de San Juan, 121 DPR 75, 88 (1988). Así pues, el procedimiento para impugnar cualquier ordenanza municipal se regía por las disposiciones del Artículo 15.002 de la Ley Núm. 81-1991, *supra*. En lo pertinente, dicho Artículo provee lo siguiente:

> (1) El Tribunal de Primera Instancia de Puerto Rico entenderá y resolverá, con exclusividad, a instancias de la parte perjudicada, sobre los siguientes asuntos:
>
> […]
>
> (b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la legislatura, del alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.
>
> […]
>
> En los casos contemplados bajo las cláusulas (a) y (b) de este inciso, la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya notificado por el alcalde o funcionario municipal autorizado a la parte querellante por escrito mediante copia y por correo regular y certificado a menos que se disponga otra cosa por ley.
>
> Disponiéndose, que el término de veinte (20) días establecido en este Artículo comenzará a decursar a partir del depósito en el correo de dicha notificación; y que la misma deberá incluir, pero sin ser limitativo, el derecho de la parte afectada a recurrir al Tribunal de Primera Instancia, Sala

Superior competente; término para apelar la decisión; fecha del archivo en auto de la copia de la notificación y a partir de [qué] fecha comenzará a transcurrir el término. 21 LPRA sec. 4702 (derogada).

Sobre el particular, se ha determinado que el plazo dispuesto en el precitado Artículo 15.002 de la Ley Núm. 81-1991, *supra*, es un término de caducidad que no permite interrupción, de modo que se logre impartir certeza y finalidad a las actuaciones del gobierno municipal. Hardland Co. v. Mun. de San Juan, 139 DPR 185, 189-190 (1995). Cónsono con lo anterior, el Tribunal Supremo resolvió que el término de caducidad para impugnar cualquier ordenanza, resolución o acuerdo municipal dependerá de si la misma es de aplicación general o específica. Mun. de Peñuelas v. Ecosystems, Inc., 197 DPR 5, 28 (2016). Cuando es de aplicación general, el término comenzará a transcurrir al día siguiente a la fecha de la actuación legislativa o administrativa. Íd. Ahora bien, "cuando la ordenanza, resolución o acuerdo municipal es de aplicación específica, el término de caducidad se entiende que ha comenzado a transcurrir desde la notificación a la parte afectada por tal actuación". Íd.

Para poder disponer de la controversia que nos ocupa, es de particular importancia que examinemos el precedente sentado por el Tribunal Supremo en Ríos v. Municipio Isabela, 159 DPR 839 (2003). Allí, el entonces alcalde del Municipio de Isabela autorizó verbalmente unos trabajos con ciertos contratistas. Dichos acuerdos fueron realizados sin registrar los créditos necesarios para el pago de tales servicios en los libros del Municipio, según disponía en el Artículo 8.004(a) de la Ley Núm. 81-1991, *supra*. Tampoco el ayuntamiento cumplió con lo que establece la Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97, ni con el Artículo 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366, relativo a que los municipios tenían el deber de mantener un registro de todos los contratos que otorgaran y remitir copia de éstos a la Oficina del Contralor de Puerto Rico.

Realizados dichos servicios, los contratistas solicitaron el pago y luego de que el Municipio de Isabela se negara a ello, éstos presentaron una acción ante el Tribunal de Primera Instancia, Sala Superior de

Aguadilla. Así las cosas, la Asamblea Municipal aprobó una resolución con el único propósito de ratificar y convalidar el acuerdo pactado entre los contratistas y el Municipio de Isabela. En vista de ello, las partes arribaron a un acuerdo transaccional y el Tribunal dictó *Sentencia*, de conformidad con el referido acuerdo. En el ínterin, llegó al Municipio de Isabela una nueva administración que, al percatarse de los hechos que contribuyeron al acuerdo transaccional, presentó una solicitud de reconsideración y sostuvo que el acuerdo se fundamentó en una resolución nula y, por tanto, el mismo adolecía de invalidez.

Trabada así la controversia, el Tribunal Supremo reiteró la normativa en nuestra jurisdicción a los efectos de que todo contrato nulo es inexistente en Derecho "desde el momento mismo en que se otorga y, por lo tanto, no puede ser objeto de confirmación ni de prescripción sanatoria". Íd., pág. 848.

> Esto es, habiéndose determinado que el contrato aquí en controversia es nulo e inexistente —y habiéndose establecido que éste no está sujeto a convalidación— **lo único que resta y procede es revocar el dictamen emitido por ambos foros inferiores y desestimar la demanda incoada**. Es decir, *no había razón alguna para que los foros inferiores entraran a discutir lo relativo al término de caducidad dispuesto en el Art. 15.002 de la Ley de Municipios Autónomos*, 21 L.P.R.A. sec. 4702, para utilizarlo como fundamento para negarse a reconsiderar la sentencia dictada. Íd., págs. 848-849 (énfasis en el original y suplido).

Es decir, entendió el alto foro judicial local que el término de caducidad de veinte (20) días que provee el Artículo 15.002 de la Ley Núm. 81-1991, *supra*, "**no puede tener el efecto de frenar un decreto de inexistencia de contrato** y, mucho menos, puede convertirse en subterfugio para convalidar contratos nulos". Íd., pág. 849 (énfasis suplido). Procedió el Tribunal Supremo a recordar que "lo inexistente nunca puede ser convalidado". Íd. "**Esta norma, repetimos, no puede ser burlada al invocar para ello el término jurisdiccional de veinte días que dispone el Art. 15.002 [de la Ley Núm. 81-1991, supra]**". Íd., pág. 850 (énfasis suplido).

Finalmente, y atinente al caso que nos ocupa, el Artículo 9.006 de la Ley de Municipios Autónomos, *supra*, que regula la venta de solares en usufructo dispone lo siguiente:

El municipio podrá vender los solares en usufructo que estén edificados a los usufructuarios de los mismos, sin necesidad de subasta pública y, en todo caso, mediante ordenanza debidamente aprobada con el voto de mayoría absoluta del total de los miembros que componen la Legislatura.

[…]

(a) Procedimiento y condiciones para la venta. — Toda ordenanza de la Legislatura autorizando la venta de los solares en usufructo establecerá las normas, reglas, condiciones y precios de venta del solar de que se trate.

(1) En el caso de solares dedicados a vivienda, el precio de venta podrá ser menor al valor de tasación que fije el [CRIM] de acuerdo a esta ley.

(2) **En el caso de solares edificados que se dediquen a la explotación de una industria, negocio o cualesquiera otras actividades con fines pecuniarios, el precio de venta será igual al valor de tasación según un evaluador de bienes raíces debidamente autorizado para ejercer como tal en Puerto Rico**. 21 LPRA sec. 4456 (énfasis suplido).

**III.**

Por estar íntimamente relacionados, discutiremos el primero, segundo, tercero y quinto señalamiento de error en conjunto.

En esencia, Hmeidan sostiene que el TPI incidió al entender que la Ordenanza Municipal era nula, pues dicho planteamiento fue traído a destiempo por el Apelado. Asimismo, arguye que el Municipio actuó en contra de sus propios actos al solicitar la nulidad de una Ordenanza Municipal que fue aprobada por el propio Apelado. Sostiene, además, que el plazo provisto que establece el Artículo 15.002 de la Ley Núm. 81-1991, *supra*, es uno de caducidad que privaba de jurisdicción al foro *a quo* de decretar la invalidez de la Ordenanza Municipal, pues esta última es una de aplicación general y el término para su impugnación comenzó a transcurrir al día siguiente de su notificación. Atacó, además, la interpretación que le dio el foro primario al caso de Ríos v. Municipio Isabela, *supra*, y sostuvo que el TPI erró al concluir que la propiedad tenía un uso pecuniario, sin recibir prueba de ello. No le asiste la razón. Veamos.

Partimos nuestro análisis estableciendo que el Tribunal Supremo de Puerto Rico ha resuelto consistentemente que los remedios en equidad no pueden invocarse en contra de los municipios pues "dichos remedios no se aplicarán cuando resulte[n] contrario[s] a una clara política pública plasmada en un estatuto o en la Constitución". Las Marías v. Municipio San Juan, 159 DPR 868, 875-876 (2003). Es más, el alto foro ha sido enfático en que no hay cabida en nuestro ordenamiento para los remedios en equidad cuando permitirlos contra un municipio equivale a "**exigir una prestación producto de un contrato nulo [que] violaría la política pública establecida en la ley municipal**". Mun. de Quebradillas v. Corp. Salud Lares, 180 DPR 1003, 1018 (2011) (énfasis suplido).

A la luz de lo anterior, es evidente que son inmeritorios los argumentos esgrimidos por el Apelante, a los efectos de que, al solicitar la nulidad de la Ordenanza Municipal, el Municipio actuó en contra de los principios básicos de equidad, incluyendo la doctrina de actuar en contra de sus propios actos. Nótese que el Tribunal Supremo ha sido consistente al determinar que en contra de los municipios es improcedente invocar cualquier doctrina de equidad, más aún cuando lo que se pretende es exigir el cumplimiento de un contrato nulo que violentaría las disposiciones de la Ley de Municipios Autónomos, *supra*. Ese es, precisamente, uno de los planteamientos que trajo ante la consideración del TPI el Municipio, a saber, que la Escritura de Compraventa es nula pues se basa en una Ordenanza Municipal que fue emitida en contra de una disposición de la Ley Núm. 81-1991, *supra*.

De otra parte, en lo referente a los argumentos relacionados con que el TPI actuó inconsistente con el mandato del panel hermano de este Tribunal, según resuelto en la *Sentencia* del caso KLAN201900174, coincidimos con el Municipio a los efectos de que no existía impedimento legal para que el foro primario considerara otro tipo de moción dispositiva, distinta a la solicitud de sentencia sumaria, y resolver un asunto de estricto derecho, como el planteado. Acoger dicha postura, sería ir en contra del arraigado principio fundamental de atender los asuntos con celeridad y

limitar el alcance de las Reglas de Procedimiento Civil. El mandato de dicha *Sentencia* a lo único que se extendía era a mantener el dictamen sumario a esa etapa de los procedimientos y nada impedía que el foro *a quo* pudiera considerar otro tipo de moción dispositiva como la aquí en controversia, la cual culminó con la *Sentencia* apelada. No le asiste la razón al Apelante.

En lo que al planteamiento jurisdiccional expresado por el Hmeidan en su recurso se refiere, si bien es cierto que lo resuelto en <u>Ríos v. Municipio Isabela</u>, *supra*, se dio dentro del contexto de una resolución municipal que pretendía validar un contrato retroactivamente, no es menos cierto que no existe impedimento para aplicar la normativa allí reconocida al caso de autos. Fíjese que el alto foro fue claro al concluir que un negocio nulo nunca nació a la vida jurídica, por lo que esa realidad **no puede ser burlada al invocar para ello el término jurisdiccional de veinte días que dispone el Art. 15.002 de la derogada Ley de Municipios Autónomos,** *supra*. Sobre este particular, el Apelante intima que las expresiones del Tribunal únicamente son aplicables cuando la actuación municipal se da con la única intención de validar retroactivamente un contrato nulo, mediante la aprobación de una resolución por parte de la asamblea municipal. Nada más lejos de la verdad. Es nuestra posición que darle una interpretación limitativa a lo resuelto en <u>Ríos v. Municipio Isabela</u>, *supra*, para permitir un acto nulo del Municipio por ser contrario a la Ley de Municipios Autónomos, *supra*, sería pasar por alto la verdadera intención legislativa consignada en el estatuto.

El derogado Artículo 9.006 de la Ley Núm. 181-1991, *supra*, disponía los límites que tenía un municipio para vender solares en usufructo. 21 LPRA sec. 4456. Esencialmente, al aludido Artículo extendía dicha potestad a dos (2) escenarios, a saber: (1) en el caso de solares dedicados a vivienda, el precio de venta podría ser menor al valor de tasación que fije el CRIM de acuerdo al estatuto; y (2) en el caso de solares edificados que se dediquen a la explotación de una industria, **negocio o cualesquiera otras actividades con fines pecuniarios, el precio de venta será <u>igual al valor de tasación según un evaluador de bienes</u>**

**raíces debidamente autorizado para ejercer como tal en Puerto Rico**. 21 LPRA sec. 4456.

Entre los argumentos traídos ante nuestra consideración, Hmeidan arguye que el TPI dio como un hecho cierto que el solar en controversia era utilizado para fines pecuniarios, sin que se le presentara prueba para ello. No obstante, al exponer dicho argumento, ignora la base jurídica sobre la cual se asentó la Escritura de Compraventa que dio paso que se le traspasara la titularidad del solar en cuestión. No existe contención alguna sobre el hecho de que el referido instrumento notarial se otorgó a base de lo dispuesto en la Ordenanza Municipal. A poco que examinemos el texto de la Escritura de Compraventa notamos lo siguiente: (1) que la base legal en la que se autorizó el aludido negocio jurídico, lo fue la Sección Tercera, inciso tres (3) de la Ordenanza Municipal; (2) que el precio de tasación del solar era de $84,661.30; y (3) que el precio de compraventa acordado fue de $23,400.00.[1]

Para efectuar nuestro análisis, se hace indispensable citar las disposiciones de la Ordenanza Municipal que se utilizaron como base para otorgar la Escritura de Compraventa. Dicha Ordenanza Municipal disponía para la venta de solares residenciales, comerciales o mixtos como parte de un plan de incentivos que aprobó el Municipio. En lo que aquí concierne, la Sección Tercera, inciso tres (3) de la Ordenanza Municipal provee lo siguiente:

> Se autoriza al Alcalde para que realice la venta de solares bajo este Plan de Incentivos, de acuerdo a lo siguiente:
>
> […]
>
> 3. **Solares comerciales y/o de uso mixto ocupados y que el negocio ubicado en el solar** esté al día en las contribuciones municipales del Impuesto de Ventas y Uso (IVU) Municipal y Patente Municipal, **se venderán con un descuento de ochenta (80%) por ciento del precio de venta, es decir, el comprador pagará el veinte (20%) por ciento del valor de tasación del CRIM para el solar particular**.[2]

---

[1] *Véase*, Apéndice del recurso de apelación, pág. 73.

[2] *Véase*, Apéndice del recurso de apelación, pág. 34 (énfasis suplido).

De las transcritas disposiciones, se desprende que la base jurídica en la cual se cimentó la transacción constituida en la Escritura de Compraventa requería, **necesariamente**, que el solar fuera comercial y/o de uso mixto y que ubicara un negocio en el mismo. Adviértase que la Ordenanza Municipal establece disposiciones específicas para la venta de solares de uso residencial que no son de aplicación en el caso de autos, por lo que, en el ejercicio lógico de nuestra labor adjudicativa sería ilusorio pensar que el solar en controversia era utilizado para fines residenciales. Lo anterior, tomando como punto de partida el fundamento bajo el cual se le traspasó la titularidad a Hmeidan. Entiéndase, es más que evidente que el solar cuya titularidad se le transfirió al Apelante tenía que, **por obligación, constituir un solar comercial y/o mixto y que en el mismo ubicara un negocio, pues de otra forma no se hubiera invocado el inciso (3) de la Sección Tercera de la Ordenanza Municipal como base jurídica para otorgar la Escritura de Compraventa**. Siendo ese el fundamento jurídico utilizado para disponer del inmueble, de conformidad con la Ordenanza Municipal, no erró al TPI al concluir que el mismo tenía un fin comercial o pecuniario.

Aclarado este particular, corresponde determinar si actuó correctamente el foro apelado al decretar la nulidad de la Escritura de Compraventa, basado en que las disposiciones que le confirieron al Municipio la facultad para disponer del solar en controversia no se ajustaban al estado de derecho. Nuestra conclusión es en la afirmativa.

Conforme hemos citado, la Ordenanza Municipal reconoció la autoridad al ayuntamiento para disponer de solares comerciales y/o de uso mixto con la presencia de un negocio a un precio descontado de hasta un 80%. Entiéndase, que les correspondía a los usufructuarios el pago de tan sólo un 20% del valor de tasación del CRIM. No obstante, si comparamos esta realidad y la contrastamos con lo que disponía el Artículo 9.006 de la Ley de Municipios Autónomos, *supra*, es patente que las transcritas cláusulas de la Ordenanza Municipal adolecen de nulidad. El aludido Artículo dispone expresamente que en la venta de solares edificados que

se dediquen a la explotación de una industria, **negocio o cualesquiera otras actividades con fines pecuniarios, el precio será <u>igual al valor de tasación según un evaluador de bienes raíces debidamente autorizado para ejercer como tal en Puerto Rico lo certifique</u>**.

Siendo ello así, no cabe otra conclusión válida en derecho que la Sección Tercera, inciso tres (3) de la Ordenanza Municipal es nula, toda vez que le reconoció al Municipio la capacidad para efectuar el negocio jurídico de venta de solares comerciales y/o mixtos en los que ubicara un negocio en una cantidad distinta al valor de tasación certificado por un evaluador de bienes raíces autorizado y no solo diferente, sino que a base del valor de tasación del CRIM y a un precio descontado de ese valor. En vista de lo anterior, es claro que la inobservancia de dichas disposiciones de la Ordenanza Municipal con el Artículo 9.006 de la Ley Núm. 81-1991, *supra*, acarrea la nulidad de la Escritura de Compraventa en controversia, puesto que las mismas fueron la base legal que dio paso al otorgamiento de dicha Escritura.

Acoger la teoría de Hmeidan equivale a reconocerle al Municipio una facultad que la Legislatura no le confirió. Por tanto, no hay duda de que nos encontramos ante un acto nulo e inexistente sobre el que no le es oponible el término de caducidad del Artículo 15.002 de la Ley Núm. 81-1991, *supra*, pues lo inexistente nunca puede ser convalidado. <u>Ríos v. Municipio Isabela</u>, *supra*, págs. 849-850. Reconocer lo contrario sería crear un subterfugio para que los municipios se adjudiquen poderes que no ostentan. *Véase*, <u>MMR Supermarket, Inc. v. Mun. Autónomo de San Lorenzo</u>, 210 DPR 271, 281-288 (2022) (Op. de Conformidad del Juez Asociado, Hon. Edgardo Rivera García). En fin, no erró el TPI al concluir que la Escritura de Compraventa y la Sección Tercera, inciso tres (3), de la Ordenanza Municipal son nulas.

Por último, en cuanto al cuarto señalamiento de error, el Apelante arguye que el foro primario erró al decretar la nulidad <u>total</u> de la Ordenanza Municipal, toda vez que la misma contiene una cláusula de separabilidad. Le asiste la razón.

En primer término, debemos enfatizar que la determinación de nulidad que hoy avalamos está relacionada, única y exclusivamente, a las disposiciones contenidas en la Sección Tercera, inciso tres (3) de la Ordenanza Municipal que está atada a la venta de solares comerciales y/o mixtos en los que ubique un negocio. Nótese, además, que la aludida Ordenanza Municipal también regula la venta de solares residenciales, los cuales se rigen por los postulados de la Sección Tercera, incisos uno (1) y dos (2) y del propio Artículo 9.006 de la Ley de Municipios Autónomos, *supra*, los cuales son inaplicables al caso que nos ocupa.

No existe duda de que la Ordenanza Municipal contiene una cláusula de separabilidad.[3] De ahí que sea indispensable recordar que una cláusula de separabilidad que proteja las partes de un estatuto o disposición que no ha sido decretada nula surte efecto "si las disposiciones válidas son capaces de que se les dé efecto legal por sí solas". Senado de PR v. ELA, 203 DPR 62, 86 (2019). Conforme hemos adelantado, el análisis del restante de las disposiciones de la Ordenanza Municipal podría seguir siendo efectivo, pues allí se regula la venta de solares residenciales, acorde con las disposiciones del Artículo 9.006 de la Ley Núm. 81-1991, *supra*, que permiten la venta de este tipo de inmueble a un precio menor al valor de tasación del CRIM, sin establecer restricción adicional.

Es por lo anterior, que procede la modificación de la *Sentencia* apelada a los efectos de que el decreto de la nulidad de la Ordenanza Municipal se extiende **<u>únicamente</u>** a la Sección Tercera, inciso tres (3) de la misma, puesto que la Sección Décimo Primera establece que sus disposiciones son independientes y separadas las unas con las otras y que cualquier declaración de inconstitucionalidad o nulidad de cualquier sección o parte por un Tribunal competente no afectará la validez de sus restantes disposiciones, siempre y cuando las cláusulas que permanezcan vigentes son capaces de que se les dé efecto legal por sí solas. Senado de PR v. ELA, *supra*, pág. 86.

---

[3] *Véase*, Apéndice del recurso de apelación, pág. 36.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *modifica* la *Sentencia* apelada a los fines de decretar **únicamente** la nulidad de la Sección Tercera, inciso tres (3) de la Ordenanza Municipal Núm. 15 del Municipio de Yauco, Serie 2016-2017, aprobada el 14 de septiembre de 2016, y de la Escritura Núm. 12 de 27 de septiembre de 2016 otorgada ante el notario público Antonio Manuel Del Toro Sánchez. Así modificada, se *confirma*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones